## CITY OF MUSKEGON HEIGHTS *v.* WILSON.

1. MUNICIPAL CORPORATIONS—RESIDENCE USE—HOME OCCUPATION.

   Courts consider such factors as customs and practices of the community, the occupation involved, the amount and kind of machinery necessary to the accomplishment of the business objective, the incidental traffic, both personal and vehicular, the effect of the conduct of the business upon the tranquility and residential character of the neighborhood and similar factors in determining whether the use of a residence in a single-family residence zone is predominantly for a home or for headquarters of a business other than a permitted home occupation.

2. WORDS AND PHRASES—ACCESSORY—CUSTOM.

   The terms *accessory* and *incidental,* as used in provision of city zoning ordinance as to buildings permitted in zone restricting use of property to single-family residences, involve *custom* as an important consideration (Muskegon Heights Zoning Ordinance, § 3).

3. MUNICIPAL CORPORATIONS—ZONING—HOME USE—COMMERCIAL BROADCASTING STATION.

   The use of premises in a single-family residential zone of a city as a commercial broadcasting station is not a customary home use (Muskegon Heights Zoning Ordinance, § 3).

4. SAME—ZONING—RESIDENCE AREA—COMMERCIAL BROADCASTING STATION—INJUNCTION.

   The operation of a commercial broadcasting station in an area zoned for single-family residence use involved a violation of

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–6] 58 Am Jur, Zoning § 104.
[2, 3] 58 Am Jur, Zoning § 46.
  What constitutes a "home occupation" or the like within accessory use provision of zoning regulation. 73 ALR2d 439.
[4–6] 58 Am Jur, Zoning § 188.
  Radio equipment as within zoning ordinance or restrictive covenant. 155 ALR 1134.

the zoning ordinance and was properly enjoined (Muskegon Heights Zoning Ordinance, § 3).

5. INJUNCTION—ZONING ORDINANCE VIOLATION—COMMERCIAL BROAD-CASTING STATION—GARAGE—BREEZEWAY.

It was not error for trial court, in suit to enjoin operation of commercial broadcasting station in a zone limited to single-family residence use, to prohibit use of garage and breezeway for "storing equipment and junk" and for other purposes; such injunction not barring use of an organ or a home workshop, or normal use of a garage (Muskegon Heights Zoning Ordinance, § 3).

6. MUNICIPAL CORPORATIONS — ZONING — INJUNCTION — COMMERCIAL BROADCASTING STATION—JURISDICTION.

A suit to enjoin the operation of a commercial broadcasting sta-tion in a city zone limiting use of property therein to single-family residences was properly brought in a State court, since it was within the province of local government, not exclusively a matter for the Federal communications commission (Mus-kegon Heights Zoning Ordinance, § 3).

Appeal from Muskegon; Pugsley (Earl C.), J., presiding. Submitted April 7, 1961. (Docket No. 34, Calendar No. 48,529.) Decided June 28, 1961.

Bill by the City of Muskegon Heights, a municipal corporation, against Waldo Wilson to enjoin viola-tion of zoning ordinance in respect to operation of a commercial radio station in residential area, and for other relief. Decree for plaintiff. Defendant appeals. Affirmed.

*William J. Balgooyen, Jr.,* for plaintiff.

*Alexis J. Rogoski* and *Robert Bunker Rogoski,* for defendant.

SMITH, J. This is a zoning case. The validity of the ordinance is not assailed, rather, its construction and application to the facts before us.

Upon the premises in question the defendant, Waldo Wilson, conducts what, he agrees, is a com-

mercial radio station. He receives messages on the telephone for subscribers to his service and broadcasts them by radio. The subscribers (an electrician, doctors, building contractors, and wreckers' services, among others) have radio receivers, as well as transmitters, in their cars or trucks and thus are enabled to receive messages broadcast to them. The equipment required in their cars is owned by defendant, leased to them, and installed by defendant, sometimes in a vacant lot near his home. In addition, repairs are also made at times at his home, at times after dark.

The tower employed for such broadcasting, combined with its antenna, is 120 feet in height, resting on a concrete slab. But defendant has purchased a new tower, weighing about 6,100 pounds, to be approximately 150 feet in height, resting upon 3 foundations of concrete (one for each leg of the tower), each foundation containing some 12,000 pounds of concrete. Some of the neighbors have experienced difficulty with television reception, allegedly because of Mr. Wilson's broadcasts. In fact, it was testified, in addition to "blacking out" the picture on certain channels, talking could also be heard, and messages, such as "Go to Bill Stern's, fryer won't work," "Number 18 * * * He went to get breakfast, as far as I know, he's still there," and "Number 15, Sandra fell and cut her chin and would like to talk to you." When Mr. Wilson's equipment was not in operation, such interference was not experienced.

The neighbors objected to these activities and the matter was brought to a head by the defendant's purchase, and contemplated erection of the new tower described above. The city of Muskegon Heights, plaintiff herein, brought its bill in chancery to enjoin the operation of the station, and for incidental relief, asserting such operation to be in

violation of section 3 of the zoning ordinance of the city.

Section 3 provides as follows:

"In the 'A' residence district no building or premises shall be used and no building shall be hereafter erected or altered, unless otherwise provided in the ordinance except for 1 or more of the following uses:

"1. Private and 2-family dwellings.

"2. Churches.

"3. Schools.

"4. Libraries.

"5. Farming and truck gardening.

"6. Accessory buildings and uses incident to any of the above uses when located on the same lot and not involving conduct of a retail business, including 1 private garage and including also home occupations engaged in by the occupants of a dwelling not involving the conduct of retail business on the premises, and including also the office of a physician, surgeon, dentist, musician, artist or similar vocations when situated in the same dwelling used by such physician, surgeon, dentist, musician, artist or similar vocations as his or her private dwelling; provided no name plate exceeding 1 square foot in area containing the name and occupation of the occupant of the premises, nor a sign exceeding 8 square feet in area appertaining to the lease, hire or sale of a building or premises shall be permitted in the 'A' residence district."

The opinion of the trial chancellor, so far as it pertains to matters now before us, was that "it is rather obvious that there is some violation of the ordinance in question, in the nature of the operation that has been conducted." He continued, however, with the hope that the parties might amicably adjust the matter between themselves and thus held it in abeyance for 90 days. This opinion was delivered at the close of trial on April 21, 1959, and filed on

May 12, 1959. The hope seems to have been unavailing, however, for many months later, in November of 1959, a decree was filed, which held that the described broadcasting was "not a permissible 'home occupation' within the meaning of said section 3" and permanently enjoined "the conduct and maintenance of a commercial radio station for the transmission and reception of radio messages for gain" upon the described premises, as well as allowing other and further relief.

The section of the zoning ordinance before us for construction has a historical basis, an understanding of which is necessary to its proper interpretation. As described in Bassett's treatise,[1] it became apparent at an early stage in the growth of the law of zoning that residential districts could not be confined to residential purposes only. From earliest times it had been customary, for example, for the doctor, or the lawyer, to have an office in his home. This was true, also, of the milliner, the music teacher, and the seamstress. But in all of these cases the business use is merely incidental or accessory, the house remaining primarily a home, not the headquarters for a business. In arriving at decision as to which use is predominant, the courts consider such factors as the customs and practices of the community, as well as of the occupation involved, the amount and kind of machinery necessary to the accomplishment of the business objective, the traffic, both personal and vehicular, incidental thereto, the effect of the conduct of the business upon the tranquility and residential character of the neighborhood, and similar factors. What the ordinances seek to avoid, in other words, is the infiltration of residential areas with small businesses or their appurtenances. So it was that we upheld the prohibition of

[1] Bassett, Zoning (1940), p 100.

the use of a private 3-car garage for the storage of
the owner's trucks containing perishable fruits and
vegetables, despite the fact that they required no
more space than similar noncommercial vehicles.
*People* v. *Scrafano,* 307 Mich 655.

But, the defendant argues, where the phrase "home
occupation" is not qualified by the word "customary,"
that limitation will not be read into the ordinance,
citing *Jantausch* v. *Borough of Verona,* 24 NJ 326
(131 A2d 881). The city argues, on the other hand,
that such words in the ordinance as "accessory" and
"incident[al]" carry their own gloss of meaning in
which custom plays a large part. We agree with de-
fendant that the use of these premises as a commer-
cial broadcasting station is not a customary home
use. We do not, however, agree that the absence of
such word is conclusive of the issue presented, or
that it throws the residential area open to the in-
vasion of whatever business may be new to the times,
regardless of its effect upon the character of the
business or of the neighborhood. We find no error
in the trial chancellor's determination that the opera-
tion of this station involved a violation of the ordi-
nance in question.

A subordinate issue concerns the use made of the
premises for other than a broadcasting station. A
garage was built in the rear in 1952 and a breezeway
in 1955. Only once has a car been placed in the
garage. Rather, it and the breezeway contain parts
of 3 pipe organs, automobile tires, a saw, and mis-
cellaneous gear of various kinds, it being impossible
at the present time to drive a car into the garage.
The building inspector testified that in the breeze-
way there was only an 18-inch space available for
walking through, the balance being taken up with
wire and equipment. Upon these facts the trial
chancellor decreed that defendant be enjoined from
using the buildings on the premises having "the

design of a garage and breezeway, for the purpose of storing equipment and junk and for purposes other than the housing of automobiles." The thrust of the injunction is clear. There is nothing here prohibiting the use of an organ, or a home workshop, in a home, or the use of a garage for its normal purposes. We find no error therein.

There is no merit in appellant's contention that the matter of the interference of appellant's station with his neighbors is a matter solely within the jurisdiction of the Federal communications commission. The question before us is one of zoning, a province of the local government. See *Presnell* v. *Leslie,* 3 NY2d 384 (165 NYS2d 488, 144 NE2d 381).

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.