100 N.J. Super. 343 (1968)
241 A.2d 861
HENRY J. MOLA AND EILEEN MOLA, PLAINTIFFS,
v.
CLYDE REILEY, INDIVIDUALLY AND AS THE BUILDING INSPECTOR OF THE BOROUGH OF MOUNTAIN LAKES AND THE BOROUGH OF MOUNTAIN LAKES, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 10, 1968.
*344 Mr. Daniel E. Isles for plaintiffs (Messrs. Querques & Isles, attorneys).
Mr. Reginald Stanton for defendants (Messrs. Jeffers and Dillon, attorneys).
FRITZ, J.S.C.
Plaintiffs move for a summary judgment on their complaint in lieu of prerogative writs seeking mandamus to compel defendant Building Inspector of the Borough of Mountain Lakes to issue a building permit for the installation of a 5,000-gallon steel gasoline tank and pump in and on plaintiffs' premises, following his refusal to issue such a permit.
The single question is whether an owner is entitled as a matter of right to a building permit for an accessory use prior to any undertaking of the primary use to which the use sought is said to be accessory. The problem does not appear to have been considered heretofore in New Jersey.
The salutary purposes of summary judgment should be noted at the outset.
*345 "* * * [Summary judgment] is designed to provide a prompt, businesslike and inexpensive method of disposing of any cause which a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion clearly shows not to present any genuine issue of material fact requiring disposition at a trial. Shientag, 4 Ford L. Rev. 186 (1935). In conjunction with the pretrial discovery and pretrial conference procedures, the summary judgment procedure aims at `the swift uncovering of the merits and either their effective disposition or their advancement toward prompt resolution by trial.' Clark, The Summary Judgment, 36 Minn. L. Rev. 567, 579 (1952). Even when a case for summary judgment is not made out, the procedure can be a valuable adjunct to pretrial conference procedure when, as may be done under R.R. 4:58-4, there results an order specifying the facts that exist without substantial controversy and directing such further proceedings in the action as are just. Cooper v. Jeter, 17 N.J. Super. 180 (Cty. Ct. 1951)." Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954).
Considerations limiting the granting of summary judgment are equally important:
"The standards of decision governing the grant or denial of a summary judgment emphasize that a party opposing a motion is not to be denied a trial unless the moving party sustains the burden of showing clearly the absence of a genuine issue of material fact. At the same time, the standards are to be applied with discriminating care so as not to defeat a summary judgment if the movant is justly entitled to one.
Thus it is the movant's burden to exclude any reasonable doubt as to the existence of any genuine issue of material fact, 6 Moore's Federal Practice, par. 56.15(3). The phrasing of our rule, R.R. 4:58-3, slightly different from Federal Rule 56 (c), underscores this in the requirement that the absence of undisputed material facts must appear `palpably.' All inferences of doubt are drawn against the movant in favor of the opponent of the motion. The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated, Templeton v. Borough of Glen Rock, 11 N.J. Super. 1, 4 (App. Div. 1950). * * *." Judson v. Peoples Bank & Trust Co. of Westfield, supra, at pages 74-75.
Plaintiffs bottom their purported right to the gasoline tank and pump upon their admitted right to use the premises for "garaging and/or servicing of motor vehicles," a use permitted by section 5.1.4 of the zoning ordinance of the Borough of Mountain Lakes. That a primary use in the *346 nature of the business of garaging or servicing of motor vehicles or both is intended by that section is clear.
There appears to be no controversy with respect to certain of the facts. Plaintiffs are the owners of parcels of vacant land in the Borough of Mountain Lakes, located within a zoning district known as Business Zone B. No proof is offered by plaintiffs on this motion as to the actual use of the land. The affidavit of defendant building inspector, which, in addition to being uncontroverted, must be "indulgently treated," Judson v. Peoples Bank & Trust Co. of Westfield, supra, clearly reflects that the land is presently being used by plaintiffs, or one of them, not for any permitted use, but rather, in contravention of the zoning ordinance. He states:
"* * * I was and am personally familiar with the use to which the plaintiffs were and are putting the premises. At all times relevant to the application, Henry J. Mola was engaged in at least three businesses: Cesspool Cleaning, Garbage Collecting, and General Contracting, none of which is a permitted use in a Business Zone `B.' He used the premises in question for parking and storing a large number of vehicles used in those businesses. He has also used the premises for piling or dumping trash, junk and waste materials. Garbage and cesspool cleaning trucks are parked and stored on the premises and give off foul and noxious odors. The vehicles and machinery are stored, dismantled and abandoned on the premises. There are frequently ten or more vehicles lying about the premises. There is no building on the premises and all of the above uses and acts occur in the open."[1]
As noted above, the inquiry is whether under any circumstances a building permit can be compelled for an accessory use prior to any undertaking of the primary use. *347 A resolution of the matter starts with a determination as to the nature of an accessory use. An accessory use has been defined as one "customarily incidental to the principal use of a building," Zahn v. Newark Board of Adjustment, 45 N.J. Super. 516, 522 (App. Div. 1957). See also State v. Mair, 39 N.J. Super. 18, 23 (App. Div. 1956). This typical definition was expanded in Borough of Chatham v. Donaldson, 69 N.J. Super. 277, 282 (App. Div. 1961), and Borough of Northvale v. Blundo, 85 N.J. Super. 56, 60 (App. Div. 1964), to include the explanation that "the [accessory] use be `so necessary or commonly to be expected that it cannot be supposed that the ordinance was intended to prevent it.'" This expanded definition suggests that an accessory use might thereby attain the status of an unexpressed permitted (i.e., primary) use, the theory being that the accessory use is so customarily incidental to the primary use and therefore to be expected, that a fictional legislative intent to include such a use might be presumed. We do not believe that this expansion, in each case appearing on appeals from conviction of violation of zoning ordinances, was intended to assert such a broad impact on traditional zoning theories.[2]
That the nature of an accessory use is something less than a primary permitted use is demonstrated by a characterization of accessory uses as "dependent on" or "pertaining to." Town of Needham v. Winslow Nurseries, 330 Mass. 95, 111 N.E.2d 453, 457, 40 A.L.R.2d 1450 (Sup. Jud. Ct. 1953). As noted above, the New Jersey definition ascribes incidence. "Incident" is defined as "something dependent upon, appertaining or subordinate to, or accompanying something else of greater or principal importance; * * * something arising or resulting from something else of greater or principal *348 importance." 1 Webster's Third New International Dictionary (1964), p. 1142. Chief Justice Weintraub, then sitting as a trial judge in the Law Division, attributed subordination to the meaning of incidental use thusly:
"* * * A use is thus incidental so long as the main use of the dwelling remains residential and the occupational activity is factually subordinate. * * *." Jantausch v. Borough of Verona, 41 N.J. Super. 89, 98 (Law Div. 1956).
Rathkopf, in a chapter devoted to accessory uses, comments:
"* * * These quasi-business uses are permissible as long as the type and magnitude of the business uses are such as to render them incidental to the primary residential use. When, however, they attain such magnitude as no longer to be incidental, they lose their status as an accessory use. In other words, the tail cannot wag the dog, and the work cannot be conducted in such a fashion that it is of equal importance to the use of the building as a residence." 1 Rathkopf, The Law of Zoning and Planning, (3d ed. 1960), p. 23-7.
A primary use must be and must continue to be dominant to an accessory use. State v. Mair, supra; see Keller v. Town of Westfield, 39 N.J. Super. 430 (App. Div. 1956).
Accordingly, it would appear that before a permit for an accessory use may be obtained, a primary use to which the accessory use is incidental and subordinate must be demonstrated. The requirement of subordination of the accessory use to the primary use, by itself, frustrates the application for such an accessory use without a demonstration of the primary use. City of Warwick v. Campbell, 82 R.I. 300, 107 A.2d 334 (Sup. Ct. 1954).
Relying on the authority of Guttman v. Borough of Bradley Beach, 15 N.J. Super. 409 (App. Div. 1951), plaintiffs contend that the building inspector has no authority to inquire into the primary use nor to speculate as to what primary use the property might be put. The Guttman case is clearly distinguishable. There a dwelling house existed *349 in a zone in which one-family houses were permitted, but two-family houses were prohibited. A permit to allow plaintiffs to lay a wooden floor in the cellar was denied because it "evidenced an intention to permit occupancy by more than one family," in violation of the ordinance. Denial of the relief sought by plaintiffs was reversed. The court held that the borough could not speculate as to whether the construction was to implement an existing use in a lawful or in an unlawful manner. The matter sub judice does not rest on a determination by the building inspector that the proposed use would be unlawful, if in fact such a determination was made. (The letter of the building inspector advising one of the plaintiffs of the denial ascribes the refusal to the fact that "The installation is not a permitted primary use and is not accessory to a permitted primary use * * *.") Rather, it turns, as set forth above, on the fact that there cannot be an accessory use where, as here, there is no demonstration of the primary use.
Plaintiffs' motion for summary judgment is denied.
NOTES
[1] The suggestion appeared in an affidavit and on argument that issues which may concern the legality of the use are presently being tested in a Chancery action. While this court may take judicial notice of the pendency of such an action, it is of no moment here. The existence of such an undetermined action and the proofs appearing therein, if any, are no part of this case, nor do they, at least prior to judgment, limit that which might otherwise be relevantly argued here.
[2] Rathkopf distinguishes between the "true accessory use" and that which appears to be an accessory use but is in fact an integral part of the primary use and attributes different legal consequences. 1 Rathkopf, The Law of Zoning and Planning, (3d ed. 1960), p. 23-24.