GROVELAND TOWNSHIP v JENNINGS

STABLEX CORPORATION v DIRECTOR, DEPARTMENT OF
NATURAL RESOURCES

Docket Nos. 51177, 54588. Submitted March 6, 1981, at Detroit.—
Decided May 20, 1981.

Donald Jennings and Stuart Jennings owned and operated a
gravel-mining excavation business in Groveland Township. The
township filed a complaint in Oakland Circuit Court, seeking
an injunction against the continued operation of the business.
The township contended that operation of the business violated
the township's zoning ordinances. The zoning classification of
defendants' property was subsequently changed from M-2
Heavy Industrial to E-1 Extractive on three of defendants'
parcels of land and R-2 Residential on the remaining parcel. In
June, 1978, defendants granted an option to purchase to Sta-
blex Corporation. A consent judgment, which was to be binding
on all successors and assigns, was entered in the circuit court
action on December 20, 1978, William J. Beer, J. The judgment
provided that the mining operation could continue subject to
reasonable regulations by the township so long as the regula-
tions would not conflict with the consent judgment. Stablex
planned to reclaim the mined property by processing hazardous
waste in a treatment plant to be constructed on the site and
utilizing the finished product as a fill for the excavated cavities
on the properties. The Groveland Township Planning Commis-
sion rejected the reclamation plan. Stablex filed a motion to
compel the township to comply with the consent judgment. The
motion was granted, William J. Beer, J., and the township was
enjoined from interfering with Stablex's operations. Stablex
then filed an action for a declaratory judgment and a writ of
mandamus, naming the Director of the Department of Natural
Resources as the defendant. The court permanently enjoined
the director from asserting that any additional construction
permits or licenses were required of Stablex Corporation. The

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 5 Am Jur 2d, Appeal and Error §§ 703, 822.
[3] 82 Am Jur 2d, Zoning and Planning § 169.

township moved to intervene, but the motion was denied. The Court of Appeals, by order dated November 18, 1980, reversed the circuit court's order denying the township's motion to intervene. The township now appeals both judgments of the circuit court. *Held:*

The court erred in ruling that the zoning ordinance did not bar Stablex's project. In order to be valid under the consent judgment, the Stablex plan with regard to the construction and operation of a hazardous waste processing plant must fit within one of the principal uses outlined in the ordinance or it must amount to an accessory use within the meaning of the ordinance. The record does not support the assertion that the construction and operation of a hazardous waste processing plant fits within one of the categories of principal uses listed in the ordinance nor does it establish that the Stablex processing plant is an accessory use to the mining operation.

The decision of the circuit court is reversed and the injunction is dissolved.

1. APPEAL — EQUITY — DE NOVO REVIEW.

The Court of Appeals reviews the record *de novo* with due deference given to the findings of the trial court in cases dealing with equitable issues.

2. APPEAL — EQUITY.

The Court of Appeals is required to sustain the findings of a trial court on equitable issues unless the Court is convinced that had it heard the evidence in the first instance it would have been compelled to rule contrary to the ruling actually made.

3. ZONING — WORDS AND PHRASES — ACCESSORY USE.

An accessory use is a use which is clearly incidental to, customarily found in connection with, and located on the same zoning lot as the principal use to which it is related.

*Raymond, Rupp & Wienberg, P.C.* (by *Thomas G. Plunkett),* for Groveland Township.

*Goldsmith, Yaker & Goldsmith,* for Jennings and Stablex Corporation.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman,* and *Thomas F. Schimpf,* Assistants At-

torney General, for Director, Department of Natural Resources.

Before: D. E. HOLBROOK, JR., P.J., and BRONSON and D. F. WALSH, JJ.

D. F. WALSH, J. This appeal involves two cases which have been consolidated. On April 19, 1979, Stablex Corporation moved to compel the Township of Groveland (hereinafter *township*) *to comply* with a consent judgment that was entered on December 20, 1978. Stablex Corporation also sought to enjoin the township from interfering with its use of the property described in the consent judgment in accordance with the submitted reclamation and site plan. After numerous proceedings between November 19, 1979, and February 12, 1980, the circuit court rendered an opinion in favor of Stablex Corporation on April 1, 1980.

Subsequently, on November 3, 1980, Stablex Corporation filed an action for a declaratory judgment and a writ of mandamus, with the Director of the Department of Natural Resources as the named defendant. On November 5, 1980, the circuit court declared that Stablex Corporation was entitled to all necessary construction permits and licenses for a hazardous waste disposal facility under MCL 299.501 *et seq.;* MSA 13.30(1) *et seq.* The court also permanently enjoined the Director from asserting that any additional construction permits or licenses were required of Stablex Corporation. The Township of Groveland moved to intervene, but the circuit court denied the motion. In an order dated November 18, 1980, this Court peremptorily reversed the circuit court's order denying the township's motion to intervene. The township now appeals both circuit court decisions.

In October, 1975, the township filed a complaint against Donald Jennings and Stuart Jennings. The suit arose from the Jennings' operation of a gravel mining excavation on four parcels of land (approximately 186 acres) in alleged violation of the township's zoning ordinances. The parties participated in extensive negotiations which culminated in a consent judgment entered on December 20, 1978, and applicable to all successors and assigns.

The consent judgment specifically stated that the mining operation is "subject to such reasonable regulations as the [p]laintiff [township] * * * may impose by valid ordinances, not inconsistent with the terms of this Judgment or not in contravention hereof * * *". It also provided that the requirements for reclamation, as set forth in Groveland Township Ordinance No. 31, shall apply to the property. The judgment goes on to state that "[i]n the event filling of the mined areas is necessary during rehabilitation, said fill material shall be essentially non-organic in nature * * *". The consent judgment also made several references to the applicable zoning: district E-1, Extractive.

Approximately one year prior to the entry of this consent judgment, the original zoning of M-2 Heavy Industrial was changed to E-1 Extractive on three parcels and R-2 Residential on one parcel.[1]

In June, 1978, the Jenningses granted Stablex Corporation, a foreign corporation wholly owned by three British firms, an option to purchase the four parcels of real estate for $1,800,000. In February, 1979, Stablex introduced a plan for reclaiming the mined property by (1) processing hazardous waste in a treatment plant to be constructed on

---

[1] The validity of this residential rezoning has been the subject of a separate lawsuit and will not be discussed in the instant case.

the site and (2) utilizing the finished product as a fill for the excavated cavities on the property.

Stablex Corporation holds a patent on a relatively new technological process that produces a material trademarked as Stablex. The crystallization process, developed by English chemists in 1969, transforms toxic and noxious industrial wastes into a chemically harmless substance, resembling inert synthetic rock. In its reclamation plan, Stablex proposed to construct a processing plant on the Jenningses' property and invest $10,-000,000 in processing equipment. At full capacity, the plant would process 500,000 tons of industrial waste per year. The land was to be restored to within three feet of the original surface. After filling the remainder with cover material, Stablex intended to farm Christmas trees on the resulting land. Stablex planned to complete the mining within 15 years and the reclamation within 25 years.

The Township Planning Commission subsequently rejected the reclamation plan and Stablex then filed suit. In granting Stablex's motion to compel compliance with the consent judgment, the circuit court held that the zoning of the three parcels of property did not preclude the reclamation project. The court sanctioned the plan submitted by Stablex in the following manner:

"[I]t is clear that these areas while zoned extractive, are required to be filled and reclaimed with a non-organic material. As the Consent Judgment controls, the filling of the mined areas cannot be prohibited by a zoning ordinance which is in contravention of that Judgment. The zoning of these parcels is therefore not a bar to the Stablex Reclamation Plan. Further, processing facilities incidental to the process are expressly permitted according to the Zoning Ordinance.

*  *  *

" 'Ordinance 31 * * * is applicable as specifically so stated in the Consent Judgment, paragraph K. Section 7.1 of that Ordinance states:

" 'All excavation shall be made either to a water producing depth * * * or shall be graded or backfilled with noxious-free, non-inflammable, and non-combustible materials * * *.

" 'Paragraph 12 of the Consent Judgment provides:

" 'In the event filling of the mined areas is necessary during rehabilitation, said fill material shall be non-organic in nature * * *.'

"The evidence, as stated above, supports the conclusion that the Stablex material is noxious-free, non-inflammable, non-combustible and inorganic in nature. Stablex thus qualifies as an acceptable fill material for reclamation as set forth in the Consent Judgment and Ordinance 31. The Township's challenge to the Reclamation Plan on this basis therefore is without reasonable basis."

The court declared Stablex's reclamation and site plan to be in compliance with the consent judgment and enjoined the township from interfering with Stablex's operations on the property. In its decision on November 5, 1980, the court subsequently declared that Stablex Corporation was entitled to all necessary construction permits and licenses for the hazardous waste disposal facility.

Groveland Township raises numerous issues on appeal, only one of which merits extensive discussion since it is dispositive of the appeal. The township argues that the court erred in ruling that the provisions of the zoning ordinance do not preclude the proposed reclamation project. We agree and reverse.

In equity cases, we review the record *de novo* with due deference given to the findings of the circuit court. This Court is required to sustain the

findings of the circuit court unless it is convinced that had it heard the evidence in the first instance it would have been compelled to rule contrary to the ruling actually made. *Schwartz v City of Flint,* ·92 Mich App 495, 539-540; 285 NW2d 344 (1979), *Emerson v Arnold (After Remand),* 92 Mich App 345, 357-358; 285 NW2d 45 (1979).

The reclamation plan submitted by Stablex contained two interrelated components: (1) construction and operation of a hazardous industrial waste processing plant; *and* (2) filling the excavated property with the product processed at that plant. In approving the Stablex plan, the circuit court ruled that, since the zoning ordinance required that the property be reclaimed, the ordinance itself could not serve as a basis for prohibiting that the land be filled with the Stablex product, an essentially inorganic substance that met the fill material specifications of both the consent judgment and the zoning ordinance.

The court's ruling is correct insofar as it holds that Stablex cannot be prevented from rehabilitating the land with inorganic fill material. Both the ordinance and the consent judgment generally provide for this type of land fill. However, the consent judgment also mandates that Stablex comply with all provisions of the township zoning ordinance, including the use restrictions of an E-1 district. Therefore, in order to be valid under the consent judgment, the Stablex plan with regard to the construction and operation of a hazardous waste processing plant must fit within one of the principal uses outlined by the ordinance or amount to an accessory use within the meaning of the ordinance.

The township zoning ordinance provides for the following principal uses:

"1. The excavation, mining, stockpiling or removal of sand and/or gravel deposits.

"2. Processing plants in connection with the washing, grading or other similar *processing of excavated materials.*

"3. Stockpiles of sand and/or gravel as the produce of an excavation operation.

"4. All of the above listed permitted uses shall be subject to the provisions of Ordinance No. 31, known as the Groveland Township Mineral Mining Control Ordinance and such uses may only be established in compliance with the provisions of Ordinance No. 31.

"5. Plants for manufacturing concrete, commonly known as 'ready-mix plants.'" Groveland Township Zoning Ordinance, § 12.01a1-5. (Emphasis added.)

Upon reviewing the record, we find no support for the assertion that the construction and operation of a hazardous industrial waste processing plant fits within one of the above categories of principal uses. Under the ordinance, processing plants are permitted only if the processing involves washing or grading or something similar thereto. Also, the ingredients are specifically limited to excavated materials. The Stablex "processing" plant fails to meet both conditions since it involves the chemical bonding of nonexcavated materials.

Likewise, the hazardous waste plant cannot be considered a "ready-mix plant". Although the Stablex product, an inert rock-like material, may be similar in some respects to concrete, it is *not* the same substance. The ingredients and the chemical reactions involved in the process in no way resemble a concrete manufacturing plant. Having failed to meet the ordinance's requirements for a principal use, the Stablex proposal can be upheld only if the processing plant is considered to be an "accessory use".

The township zoning ordinance provides for accessory uses as follows:

"Accessory buildings, structures and uses, customarily incidental to any of the above principal uses, when located on the same property and not involving any business, profession, trade or occupation other than provided for in the E-1, Extractive District above." Groveland Township Zoning Ordinance, § 12.02a.

An "accessory use" is generally defined as a use "which is clearly incidental to and customarily found in connection with and located on the same zoning lot as is the principal use to which it is related". 2 Rathkopf, The Law of Zoning and Planning (4th ed), § 23.01, p 23-2. See 82 Am Jur 2d, Zoning and Planning, § 169, pp 672-675 (1976).

The general nature of an accessory use hinges on the meaning of the definitional terms "customarily incidental". In *Mola v Reiley*, 100 NJ Super 343; 241 A2d 861, 864 (1968), the Court discussed the terms as follows:

"That the nature of an accessory use is something less than a primary permitted use is demonstrated by a characterization of accessory uses as 'dependent on' or 'pertaining to.' *Town of Needham v Winslow Nurseries,* 330 Mass 95; 111 NE2d 453, 457; 40 ALR2d 1450 (Sup Jud Ct 1953). As noted above, the New Jersey definition ascribes incidence. 'Incident' is defined as 'something dependent upon, appertaining or subordinate to, or accompanying something else of greater or principal importance; * * * something arising or resulting from something else of greater or principal importance.' 1 *Webster's Third New International Dictionary* (1964), p 1142. Chief Justice Weintraub, then sitting as a trial judge in the Law Division, attributed subordination to the meaning of incidental use thusly:

"'* * * A use is thus incidental so long as the main use of the dwelling remains residential and the occupa-

tional activity is factually subordinate. * * *.' *Jantausch v Borough of Verona,* 41 NJ Super 89, 98; 124 A2d 14, 19 (Law Div, 1956).

"Rathkopf, in a chapter devoted to accessory uses, comments:

" '* * * These quasi-business uses are permissible as long as the type and magnitude of the business uses are such as to render them incidental to the primary residential use. When, however, they attain such magnitude as no longer to be incidental, they lose their status as an accessory use. In other words, the tail cannot wag the dog, and the work cannot be conducted in such a fashion that it is of equal importance to the use of the building as a residence.' 1 Rathkopf, The Law of Zoning and Planning, (3d ed, 1960), p 23-7.

"A primary use must be and must continue to be dominant to an accessory use. *State v Mair, supra;* see *Keller v Town of Westfield,* 39 NJ Super 430; 121 A2d 419 (App Div, 1956)."

Accord, *Gratton v Pellegrino,* 115 NH 619; 348 A2d 349 (1975) (an accessory use is a subordinate use of the property occasioned by the principal use, and is not the main use of the property), *Town of Harvard v Maxant,* 360 Mass 432; 275 NE2d 347 (1971), *Schwartz v Chave,* 53 Misc 2d 1007; 281 NYS2d 133 (Sup Ct, 1967) (an accessory use must not be the dominant use).

In *City of Muskegon Heights v Wilson,* 363 Mich 263, 267; 109 NW2d 768 (1961), the Supreme Court stated that the business accessory use must be "clearly incidental" to the residential use of property in a residential district. In *Arundel Supply Corp v Cason,* 265 Md 371; 289 A2d 585 (1972), the court held that the washing, screening and batching of materials brought from other locations was not an accessory use of a gravel pit whose own supply of sand and gravel had been exhausted.

In the instant case, we must determine whether

the construction and operation of a hazardous waste processing plant is "customarily incidental" to the principal uses of mining and reclamation. The question becomes one of whether Stablex is processing industrial waste so as to reclaim the land or whether Stablex is reclaiming the land in order to be allowed to operate a hazardous waste disposal plant. In our judgment, the evidence in the record clearly supports the latter conclusion that the reclamation of the land is merely incidental to the primary purpose of hazardous waste disposal.

Stablex Corporation has exercised its option to purchase the property for $1,800,000 and intends to invest $10,000,000 for the processing equipment. At full capacity, Stablex proposes to take in approximately 500,000 tons of hazardous waste per year. The land would be reclaimed over an estimated period of 25 years. The magnitude of the size and operation of this project leads to the conclusion that the dominant purpose of Stablex's proposal was the disposal of hazardous industrial wastes for profit. Any reclamation of the land was purely incidental to this main objective and has been dwarfed in comparison to Stablex's proposed commercial enterprise. The investment of millions of dollars cannot be considered as subordinate to the reclaiming of the land. The testimony demonstrates that Stablex is not investing $10,000,000 for processing equipment and implementing a 25-year reclamation project with the intent of recouping its investment by operating a Christmas tree farm.

Since the record establishes that the Stablex processing plant is not an accessory use to the mining operation and we have previously stated that this component of the Stablex reclamation

plan is not a valid principal use under the zoning ordinance, we conclude that the court erred in ruling that the zoning ordinance did not bar Stablex's project.

The township's appeal of the declaratory judgment and injunction entered on November 5, 1980, has been rendered moot by the passage of 1980 PA 301.

The decision of the circuit court is reversed and the injunction is dissolved.