GROVELAND TOWNSHIP v JENNINGS

STABLEX CORPORATION v DIRECTOR, DEPARTMENT OF
NATURAL RESOURCES

Docket Nos. 68386, 68387. Argued October 6, 1983 (Calendar No. 8).—
Decided December 10, 1984.

Groveland Township brought an action in the Oakland Circuit
Court against Donald Jennings and Stuart Jennings, operators
of a gravel mining business in the township, seeking to enjoin
the continued operation of the business on the ground that it
violated township zoning classifications. The original zoning
classifications were changed prior to entry of judgment. The
court, William J. Beer, J., entered a consent judgment provid-
ing that mining operations could continue subject to reasonable
regulation by the township not inconsistent with the judgment.
The Jenningses granted Stablex Corporation an option to pur-
chase the business property. Stablex then proposed a plan to
reclaim the mined property by processing hazardous industrial
waste in a treatment plant to be constructed on the site and to
use the processed waste as fill. The township planning commis-
sion rejected the plan *inter alia* because such use would violate
the township zoning ordinance. The court granted Stablex's
motion to compel the township to comply with the consent
judgment and enjoined further interference by the township
with Stablex's operations. In a separate action, the court
granted Stablex a judgment against the Department of Natural
Resources, declaring Stablex to be entitled to all necessary
permits and licenses for construction of the hazardous waste
facility and permanently enjoining the department from requir-
ing additional permits or licenses. The Court of Appeals, D. E.
Holbrook, Jr., P.J., and Bronson and D. F. Walsh, JJ., reversed,
holding that the consent judgment required compliance with

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 61A Am Jur 2d, Pollution Control § 250 *et seq.*
82 Am Jur 2d, Zoning and Planning §§ 61, 145.5, 149.
Applicability of zoning regulations to waste disposal facilities of
state or local governmental entities. 59 ALR3d 1244.
Applicability of zoning regulations to governmental projects or
activities. 61 ALR2d 970.

the township zoning ordinance. Thus, Stablex could reclaim the property with inorganic fill, but construction of the processing plant was precluded because it did not fit within one of the principal uses of the property as zoned. Stablex appeals.

In an opinion by Justice Kavanagh, joined by Chief Justice Williams and Justices Ryan, Brickley, Cavanagh, and Boyle, the Supreme Court *held:*

A hazardous waste treatment, storage, or disposal facility which is not subject to a review by the site review board or which does not require a construction permit under the Hazardous Waste Management Act is subject to local ordinances governing land use and construction of such facilities even where an ordinance would preclude construction at a particular site.

1. The Hazardous Waste Management Act, as part of its comprehensive regulatory scheme, provides for the construction of hazardous waste treatment, storage, and disposal facilities. Once a construction permit for such a facility is issued, the act precludes a municipality from applying its ordinances and regulations to prohibit the construction and operation of the facility.

2. Amendment of the act to exempt certain facilities from the act's construction requirements was not intended to relinquish all control over the placement of the facilities. Facilities which qualify for exemption from the requirements of the act are subject to local requirements pertaining to land use and construction of such facilities.

3. Because Stablex is an existing facility within the meaning of the act, and because it did not seek a construction permit or site review board approval and instead availed itself of an exemption from such permit and approval under the act, it must comply with all local ordinances and requirements affecting construction of its proposed facility. Because the proposed facility does not fit within one of the principal or accessory uses permitted by the township zoning ordinance, construction of the facility on the property in question is barred.

4. The trial court concluded that industrial waste processed by Stablex by use of its patented method qualifies as an acceptable fill material for reclamation as set forth in the consent judgment and the ordinance. No evidence was offered on appeal that permits the conclusion that the trial court erred.

Affirmed.

Justice Levin, in a separate opinion, wrote that the provision of the amendment of the Hazardous Waste Management Act to

exclude certain facilities in existence on November 19, 1980, from obtaining site approval by the site approval board was intended to relieve only a particular company of all state permit requirements for a specific planned facility by November 19, 1980, so that it would be able to satisfy certain federal requirements by the same date which could not have been satisfied if obtaining site approval had been required. Although it appears that the amendment was intended to benefit only that company, the language of the act, to avoid the appearance of special legislation, was framed in general terms. Because the record is unclear whether the company actually did or could have obtained a building permit consistent with existing zoning use restrictions, remand should be required for development of the record in that regard. If the company had obtained a building permit by November 19, consistent with existing zoning use restrictions, and possibly if it had not but could have obtained such a permit consistent with such use restrictions, the term "on the construction" could be construed to include local site approval because then such a construction would accomplish both legislative objectives. On the other hand, if the company had not in fact obtained such a permit by that date and its failure to have done so would have constituted a failure to satisfy federal requirements even if it *could* have obtained such a permit, that would appear to require, to accomplish the legislative objectives, that the term "on the construction" be construed as not including local site approval.

106 Mich App 504; 308 NW2d 259 (1981) affirmed.

OPINION OF THE COURT

1. ZONING — HAZARDOUS WASTE TREATMENT — HAZARDOUS WASTE MANAGEMENT ACT.

A hazardous waste treatment, storage, or disposal facility which is not subject to a review by the site review board or which does not require a construction permit under the Hazardous Waste Management Act is subject to local ordinances governing land use and construction of such facilities, even where an ordinance would preclude construction at a particular site (MCL 299.516[1]; MSA 13.30[16][1]).

2. ZONING — HAZARDOUS WASTE TREATMENT — HAZARDOUS WASTE MANAGEMENT ACT.

The Hazardous Waste Management Act, as part of its comprehensive regulatory scheme, provides for the construction of hazardous waste treatment, storage, and disposal facilities; once a construction permit for such a facility is issued, the act precludes a municipality from applying its ordinances and regula-

tions to prohibit the construction and operation of the facility (MCL 299.516[1]; MSA 13.30[16][1]).

3. ZONING — HAZARDOUS WASTE TREATMENT — HAZARDOUS WASTE MANAGEMENT ACT.

Construction of a hazardous waste treatment plant by a landowner that claimed exemption from the provisions of the Hazardous Waste Management Act requiring procurement of a construction permit from the Department of Natural Resources or approval of an application by a site review board because its disposal facility was in existence prior to enactment of the requirements, was precluded by a local zoning ordinance because, by claiming exemption, the facility was subject to all local requirements relative to construction of hazardous waste disposal facilities (MCL 299.516[1]; MSA 13.30[16][1]).

4. ZONING — HAZARDOUS WASTE TREATMENT — HAZARDOUS WASTE MANAGEMENT ACT.

Amendment of the Hazardous Waste Management Act to exempt certain facilities from the act's construction requirements was not intended to relinquish all control over the placement of the facilities; facilities which qualify for exemption from the requirements of the act are subject to local requirements pertaining to land use and construction of such facilities (MCL 299.516[1]; MSA 13.30[16][1]).

SEPARATE OPINION BY LEVIN, J.

5. ZONING — HAZARDOUS WASTE TREATMENT — HAZARDOUS WASTE MANAGEMENT ACT.

*Amendment of the Hazardous Waste Management Act to exempt facilities for which approval of construction had been received from the federal air pollution control commission by November 19, 1980, from the requirement under the act of obtaining site approval by the state site approval board was intended to relieve only a particular company of all state requirements for a specific facility so that it could satisfy federal requirements, although the language of the act was framed in general terms to avoid the appearance of special legislation; thus, determination whether the term "on the construction" in the amendment was intended to allow application of local zoning use restrictions to the construction required a finding that the company did or could have obtained a construction permit consistent with such restrictions so as to accomplish the legislative objectives (MCL 299.516[1]; MSA 13.30[16][1]).*

*Raymond, Rupp & Wienberg, P.C.* (by *Thomas G.*

*Plunkett* and *Mark Filipp),* for Groveland Township.

*Goldsmith, Yaker & Goldsmith* (by *Barry Yaker* and *Walter J. Goldsmith)* for Stablex Corporation.

Amicus Curiae:

*Bauckham, Reed, Lang, Schaefer & Travis, P.C.* (by *Robert F. Travis),* for Michigan Townships Association.

KAVANAGH, J. We are asked to determine whether § 16 of the Michigan Hazardous Waste Management Act, MCL 299.501 *et seq.;* MSA 13.30(1) *et seq.,* pre-empts local ordinances which would prohibit the construction of hazardous waste disposal facilities claiming the status of an existing facility within the meaning of 1980 PA 301. We hold that it does not and affirm the Court of Appeals determination that the proposed processing plant must comply with the Groveland Township zoning ordinance.

The facts leading up to this litigation were set forth by the Court of Appeals, *Groveland Twp v Jennings,* 106 Mich App 504, 507-508; 308 NW2d 259 (1981):

"In October, 1975, the township filed a complaint against Donald Jennings and Stuart Jennings. The suit arose from the Jennings' operation of a gravel mining excavation on four parcels of land (approximately 186 acres) in alleged violation of the township's zoning ordinances. The parties participated in extensive negotiations which culminated in a consent judgment entered on December 20, 1978, and applicable to all successors and assigns.

"The consent judgment specifically stated that the mining operation is 'subject to such reasonable regulations as the [p]laintiff [township] * * * may impose by

valid ordinances, not inconsistent with the terms of this judgment or not in contravention hereof * * *'. It also provided that the requirements for reclamation, as set forth in Groveland Township Ordinance No. 31, shall apply to the property. The judgment goes on to state that '[i]n the event filling of the mined areas is necessary during rehabilitation, said fill material shall be essentially non-organic in nature * * *'. The consent judgment also made several references to the applicable zoning: district E-1, Extractive.

"Approximately one year prior to the entry of this consent judgment, the original zoning of M-2 Heavy Industrial was changed to E-1 Extractive on three parcels and R-2 Residential on one parcel.

"In June, 1978, the Jenningses granted Stablex Corporation, a foreign corporation wholly owned by three British firms, an option to purchase the four parcels of real estate for $1,800,000. [Stablex subsequently exercised the option and purchased the property.] In February, 1979, Stablex introduced a plan for reclaiming the mined property by (1) processing hazardous waste in a treatment plant to be constructed on the site and (2) utilizing the finished product as a fill for the excavated cavities on the property.

"Stablex Corporation holds a patent on a relatively new technological process that produces a material trademarked as Stablex. The crystallization process, developed by English chemists in 1969, transforms toxic and noxious industrial wastes into a chemically harmless substance, resembling inert synthetic rock. In its reclamation plan, Stablex proposed to construct a processing plant on the Jennings' property and invest $10,000,000 in processing equipment. At full capacity, the plant would process 500,000 tons of industrial waste per year. The land was to be restored to within three feet of the original surface. After filling the remainder with cover material, Stablex intended to farm Christmas trees on the resulting land. Stablex planned to complete the mining within 15 years and the reclamation within 25 years."

Stablex's reclamation plan was rejected by the Groveland Township Planning Commission. Sta-

blex then moved in the Oakland Circuit Court for
an order declaring that the reclamation plan com-
plied with the consent judgment. Stablex also
sought to enjoin the township from interfering
with Stablex's use of the property in accordance
with the reclamation plan. The township opposed
the motion, stating as the principal reason that
the property was not zoned for the uses to which it
would be put under the reclamation plan. The
trial court ordered the township to accept the
reclamation plan on the grounds that the consent
judgment required that the excavated property be
filled and reclaimed with an inorganic material.
Because, by its terms, the consent judgment con-
trols, ruled the court, the reclamation could not be
prohibited by a zoning ordinance in contravention
thereof. The processing facility to be constructed
on the site was incidental to the plan for filling
the excavated property and was therefore permit-
ted under the zoning ordinances.

On appeal to the Court of Appeals, the township
argued that the trial court erred in ruling that the
provisions of the township zoning ordinance do not
preclude the proposed reclamation project.

The Court of Appeals agreed and reversed. The
Court agreed with the trial court that the consent
judgment and ordinances provide for rehabilitat-
ing the land with an inorganic material. The
consent judgment also requires, however, said the
court, compliance with the use restrictions of the
E-1 zoning of the property. Thus, the facility to be
constructed for processing the hazardous waste
into inorganic fill material must fit within one of
the principal uses permitted by the ordinance or
amount to an accessory use. The Court concluded
that the hazardous waste processing facility pro-
posed by Stablex was not a use incidental to the
uses of mining and reclamation.

On this appeal, appellant Stablex does not challenge the Court of Appeals construction of the consent judgment and relevant zoning ordinances. Stablex presents two questions. First, it asks whether the Hazardous Waste Management Act pre-empts all local regulations which would prohibit the construction and operation of a hazardous waste processing facility. Second, it asks whether it has the right to fill the excavated property with the Stablex™ material.

Stablex argues that through the HWMA, the Legislature intended to pre-empt the regulatory field of hazardous waste management. Local regulations which would prohibit hazardous waste management facilities must yield. Appellee township therefore may not enforce its zoning of the property in question to prohibit construction of the proposed facility.

The township recognizes the comprehensive regulatory scheme of the HWMA and acknowledges that once the act's procedures are followed and a construction permit issued, the act prohibits a municipality from applying its ordinances and regulations to prohibit the construction and operation of a facility. The township maintains, however, that 1980 PA 301, amending MCL 299.516; MSA 13.30(16), provides for the application of local law to facilities claiming an exemption from a construction permit and site review board approval under its terms.

MCL 299.516(1); MSA 13.30(16)(1) provides:

"A treatment, storage, or disposal facility in existence on January 1, 1980, or a treatment, storage, or disposal facility in existence on November 19, 1980, for which approval of construction has been received from the air pollution control commission, shall not be subject to a review of the board or require a construction permit under this act except for an expansion, enlargement, or

alteration of the treatment, storage, or disposal facility beyond its original authorized design capacity or beyond the area specified in the operating license, original construction permit, or other authorization. *This subsection does not abridge or alter the effect of a local ordinance, permit requirement, or other requirement on the construction of a treatment, storage, or disposal facility described in this subsection.*" (Emphasis added.)

The township relies on the emphasized language of the statute just quoted for its contention that facilities which meet the qualifications of § 16 are subject to local ordinances, including zoning ordinances, governing hazardous waste disposal facilities, even if they would operate to prohibit such a facility.

Stablex contends that because it was an existing facility within the meaning of § 16, local law could not operate to prohibit construction of the facility. The construction given the last sentence of § 16 by the township, argues Stablex, would effectively deny its status as an existing facility. Stablex contends that § 16 has a narrower meaning. Only ordinances such as setback requirements and building codes fall within the meaning of § 16; local ordinances which would prevent construction of such facilities are pre-empted, contends Stablex.

As originally enacted, § 16 of 1979 PA 64 provided:

"A disposal facility in existence on the effective date of this act shall not be subject to a review of the board except for an expansion, enlargement, or alteration of the disposal facility beyond its original authorized design capacity or beyond the area specified in the operating license, original construction permit, or other authorization. The expansion, enlargement, or alteration of a disposal facility in existence on the effective date of this act constitutes a new proposal for which a construction permit is required."

By 1980 PA 301, § 16 was amended to add "January 1, 1980", which was the effective date of the act, as well as "November 19, 1980". This latter date was added, according to a House Legislative Analysis, to accommodate Upjohn Company of Kalamazoo. House Legislative Analysis, HB 6037, September 29, 1980.

We believe that § 16 was intended to function as a type of grandfather clause. Facilities in existence on January 1, 1980, the effective date of the act, were excepted from "a review of the board". Later brought within this exception to the act were facilities "in existence on November 19, 1980, for which approval of construction has been received from the air pollution control commission". 1980 PA 301. Such facilities also were excepted from "a review of the board or * * * a construction permit" under the act.

By excepting certain facilities from the act's requirements, however, the Legislature did not intend to free them from all or even only some of the regulations, such as local ordinances, otherwise pre-empted by the act. When by the 1980 amendment the Legislature excepted certain facilities in existence after the effective date of the act, it provided that:

"This subsection does not abridge or alter the effect of a local ordinance, permit requirement, or other requirement on the construction of a treatment, storage, or disposal facility described in this subsection."

The House Legislative Analysis stated that the 1980 amendment "would make facilities which are eligible for the exemption subject to any local requirements having to do with the construction of hazardous waste disposal facilities". House Legislative Analysis, HB 6037, September 29, 1980.

Were facilities which qualify under § 16 exempt not only from the act but also from local zoning ordinances governing land use, as Stablex contends, there would be no control over the placement of such facilities. We doubt the Legislature intended such a result.

We conclude that a treatment, storage, or disposal facility which is not "subject to a review of the board or [does not] require a construction permit under [the] act," within the meaning of § 16, is subject to local ordinances governing land use and construction of such facilities, even though they might preclude construction at a particular site.

We agree with the Court of Appeals that Stablex's proposed processing facility does not fit within one of the principal uses outlined in the zoning ordinance or amount to an accessory use within the meaning of the ordinance. *Groveland Twp, supra,* pp 510-514. The Court of Appeals decision that the provisions of the township zoning ordinance bar the construction of a hazardous waste processing plant on the property in question is affirmed.

As a separate question, Stablex asks whether it has the right to fill the excavated property with the Stablex™ material, regardless of whether it may construct and operate a hazardous waste disposal facility on the site. Stablex argues that these matters have always been distinct, but were confused in the Court of Appeals. The township, however, contends that Stablex has always treated them as part of the same reclamation plan. The township argues that Stablex should be estopped from treating them separately now.

The trial court concluded that Stablex™ "qualifies as an acceptable fill material for reclamation as set forth in the consent judgment and Ordi-

nance 31". The Court of Appeals agreed that the trial court's ruling was "correct insofar as it holds that Stablex cannot be prevented from rehabilitating the land with inorganic fill material".

We are not persuaded that the trial court erred in concluding that the Stablex™ material qualified as an acceptable fill material under the consent judgment and ordinance.

Affirmed.

WILLIAMS, C.J., and RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with KAVANAGH, J.

LEVIN, J. *(separate opinion)*. The Hazardous Waste Management Act[1] provides for site approval by a site approval board appointed pursuant to the provisions of the act, and requires obtaining issuance of a construction permit. Section 16 of the act relieves facilities in existence on the effective date of the act of those requirements.

1980 PA 301 amended § 16 of the act to include in that grandfather clause a facility in existence on November 19, 1980, "for which approval of construction has been received from the air pollution control commission". The amendatory act stated, however, that § 16, as so amended, "does not abridge or alter the effect of a local ordinance, permit requirement, or other requirement on the construction" of such a November 19 facility.

I

The amendatory act in terms relieves such a November 19 facility from obtaining site approval by the site approval board to be appointed pursuant to the provisions of the act. The question

---

[1] 1979 PA 64, MCL 299.501 *et seq.;* MSA 13.30(1) *et seq.*

presented is whether it was intended to relieve such a November 19 facility from obtaining site approval by the local governing authority.

The township would construe the term "on the construction" to include zoning *use* restrictions while Stablex would construe it to exclude use restrictions and as covering only zoning *building* restrictions and *building* code requirements.

The legislative history indicates that the purpose of the act was to relieve Upjohn Company of Kalamazoo of "all state permit requirements" for that company's planned hazardous waste disposal facility so that it could by that date satisfy certain federal requirements that it could not satisfy by that date if it had to obtain site approval by the site approval board.

We are not informed whether Upjohn had obtained by November 19 a building permit for its planned facility or whether it could have obtained a building permit by that date consistent with existing zoning use restrictions applicable to the site of the proposed facility. If it had not or could not, then accomplishment of the legislative purpose would require that we construe the amendatory act so that the term "on the construction" does not include local site approval (zoning use restrictions); the Legislature did not, in amending § 16 to eliminate the site approval board obstacle to compliance with federal requirements, intend to empower the Kalamazoo local government with authority to deny Upjohn local site approval and thus with the authority to frustrate the purpose of the legislation. However, if Upjohn had obtained, or possibly if it could have obtained, by that date a building permit consistent with existing zoning use restrictions, then the term "on the construction" did not, at least as to Upjohn, include, in practical effect, local site approval (zoning use restrictions).

II

The Legislature was advised in an analysis of the amendatory act prepared by the Legislative Service Bureau, that Upjohn had already obtained approval by the Air Pollution Control Commission and that "[n]o other facility would qualify for the exemption provided by the bill". Stablex, however, had already also obtained such approval.

Although the Legislature was advised that only Upjohn would benefit from the amendatory act, the language of the amendatory act was designed to speak generally so as to include with its intendment any existing November 19 facility that had obtained Air Pollution Control Commission approval. While it appears that the Legislature intended to benefit only Upjohn, it also intended to avoid the appearance of special legislation by describing the Upjohn situation in terms that ran the risk of including another facility for which Air Pollution Control Commission approval had been obtained.

If Upjohn had obtained a building permit by November 19, consistent with existing zoning use restrictions, and possibly if it had not but could have obtained such a permit consistent with such use restrictions, we could construe the term "on the construction" to include local site approval because then such a construction would accomplish both legislative objectives.

I would, retaining jurisdiction, remand for development of the record in that regard before deciding in this action for a declaratory judgment what construction we should place on the amendatory act. If Upjohn had obtained, or possibly if it could have obtained, by November 19 a building permit consistent with existing zoning use restrictions,

then we must decide whether the term "on the construction" includes zoning use restrictions. On the other hand, if Upjohn had not in fact obtained such a permit by that date and its failure to have done so would have constituted a failure to satisfy federal requirements even if it *could* have so obtained such a permit, that would appear to require, to accomplish the legislative objectives, that the term "on the construction" be construed as not including local site approval.