Froessel, J.
Petitioner is an amateur radio operator, duly licensed by the Federal Communications Commission to operate and maintain a station at his residence in Westbury, Long Island, which is located in a “ Residence A ’ ’ zone of the village, the highest classification of zoning. For a period of seven years, petitioner operated his station using an antenna on a 10-foot wooden pole. He now seeks to replace it with a 44-foot steel tower.
Application for a permit to erect the tower was denied by the building inspector on the ground that “it is neither an accessory building or use customary to a residential dwelling and the same does not belong in a residential zone On appeal to the Board of Appeals, petitioner claimed that such a tower “is an accessory use with and customarily incidental to a private one-family house ”, and that he had the right to a permit therefor. At the board hearing, the Westbury Gardens Association and 20 residents of the village opposed the granting of the permit, while 5 persons, only 3 of whom were village residents, favored the application. The evidence before the board is rather briefly presented to us by way of an “ Extract of the Minutes of the Hearing ”, and what appears to be *387 only a summary of the testimony taken there. The text of a number of letters concerning the matter sent to the board was not included. There is no evidence in this record that an amateur radio station cannot be operated without a 44-foot steel tower for an antenna, and there is evidence, as already noted, that petitioner had been operating for seven years previously.
The board, after considering the matter for more than a month following the hearing, unanimously voted to affirm the ruling of the building inspector refusing the permit. In an affidavit submitted by its chairman in the present proceeding, she states that, in the view of the board, the proof at the hearing established that the structure would “be an eyesore in an exclusively residential community occupied by private homes situated close to one another ”, that it would be “ a menace to the safety of children”, and that it would have “ an adverse effect upon real estate value in the neighborhood ”. No such structure as proposed has ever existed in the village.
In this proceeding to annul the determination of the board, and to compel the issuance of a permit,' Special Term was of the opinion that the ‘ ‘ erection of' this rotary beam antenna tower ” was not “ an accessory or customarily incidental use of the premises ”. The Appellate Division, in unanimously affirming the dismissal of the petition, stated that it did not find it necessary to pass upon the question as to whether the proposed tower is a permitted “ customarily incidental ” accessory use ‘1 for in no event has appellant shown a clear legal right to the relief demanded if the tower is not a permissible accessory use, the building permit was properly denied; if it be a permitted one, the tower must be considered an accessory building, and therefore limited in height by section 11 of article III of the Village of Westbury Amended Building Zone Ordinance of 1937 to 20 feet. Since we are of the view that the proposed tower is not an accessory use, and the ordinance when so construed and applied is constitutional, we do not reach the question as to whether restricting its height to 20 feet would be valid.
"While we are all familiar with antennae used in conjunction with television receivers, and their appearance on rooftops is a part of the national scene, there is an unmistakable difference between the ordinary television antenna and the 44-foot-high structure petitioner seeks to construct in his back yard, which is more akin to a commercial broadcasting tower. It is clear *388 that, in the conduct of a hobby, the scale of its operation may well carry it beyond what is customary or permissible. Thus one who builds a stable in which to keep show horses has not constructed an accessory building (Pratt v. Building Inspector of Gloucester, 330 Mass. 344, 346). So, a simple workshop may be expanded beyond all reasonable bounds. Similarly, maintenance of a candy, tobacco and newspaper counter in an apartment house is not an accessory use of the premises (Matter of 140 Riverside Drive v. Murdock, 276 App. Div. 550).
In the present case, there was no sufficient showing that it was customary to have towers of the kind petitioner desired to erect in “A.” residential areas of a suburb. While we are informed that there are 146,000 licensed amateur radio operators in the United States, we are not told the number using antennae of the type petitioner seeks to erect, nor where amateur operators having such towers reside. In the absence of such evidence, and yet with due regard for the valuable services rendered by amateur radio operators, it cannot be said as a matter of law that the erection of a 44-foot steel tower in a compact residential area of a suburban community, where dwellings are restricted in height to 35 feet (Building Zone Ordinance, art. Ill, § 8), is a customarily incidental use of residential property, or one which might commonly be expected by neighboring property owners.
In failing to draw a distinction between ordinary television and radio antennae for reception on the one hand, and an elaborate tower constructed for the purpose of far-flung radio transmission and reception on the other, the courts in the cases cited by appellant merely considered the kind, but gave no consideration to the degree of use, in determining whether or not a given structure is customarily incidental to residential property in a highly classified zone. Moreover, in Village of St. Louis Park v. Casey (218 Minn. 394), the action was for an injunction; Wright v. Vogt (7 N. J. 1) involved an exception to a height restriction, and in Appeal of Lord (368 Pa. 121) no one opposed the application, and the court conceded the question was a “ close ” one.
Petitioner contends that the denial of the right to erect the tower constitutes a deprivation of property without due process of law in contravention of the New York State and Federal Constitutions. It is clear that if the construction and appli *389 cation of the ordinance deprived petitioner of the use of his property on some basis wholly unrelated to the police power of the State, the ordinance would be invalid (Nectow v. City of Cambridge, 277 U. S. 183,187-188; Euclid v. Ambler Realty Co., 272 U. S. 365, 395; Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189, 196; Baddour v. City of Long Beach, 279 N. Y. 167,174; 1 Rathkopf on Law of Zoning and Planning, ch. 8, pp. 141-145).
This is not such a case, however. There was some evidence before the board as to the tendency of children to climb on such towers, which in this case embodied a solid loop stepladder, and the board could have regarded petitioner’s offer to fence in the tower as insufficient protection. Moreover, there was evidence as to the effect of the proposed tower on property values. There was also evidence before the board from which it could properly find that the proposed tower, ‘ ‘ constructed to withstand winds up to 85 miles per hour ”, and to sustain a %-ton load, erected on a 6-foot triangular base, would be “an eyesore in an exclusively residential community occupied by private homes situated close to one another ”, and would not be in conformity with the character of the neighborhood. While we have never supported a zoning ordinance which restricts the use of property for a purely aesthetic reason alone, we have stated that such considerations are not wholly without weight (Baddour v. City of Long Beach, supra; Dowsey v. Village of Kensington, 257 N. Y. 221, 230; see Perlmutter v. Greene, 259 N. Y. 327, 332; 8 McQuillin on Municipal Corporations [3d ed.], §§ 25.30, 25.31).
It should also be noted in considering whether the ordinance constitutes a taking of property without due process that petitioner is not being deprived of any substantial part of the value of the premises involved. Nor is he here being totally prevented from carrying on his hobby, as was the case in People v. Miller (304 N. Y. 105, 109) where we quoted with approval the statement in Barkmann v. Town of Hempstead (268 App. Div. 785, affd. 294 N. Y. 805) that “ ‘ Depriving [defendant] of this pastime does not affect substantially [his] property rights * * * in the use of the premises, which are otherwise undisturbed and unimpaired.’ ” Thus, balancing the restriction as between the unlimited exercise of petitioner’s hobby on the one hand and the public interest on the other, it has not been shown *390 by any reasonable interpretation of the facts in this record that the ordinance is not justified under the police power of the State (Shepard v. Village of Skaneateles, 300 N. Y. 115, 118); and even if the legislative classification for zoning purposes as construed by the board be ‘ ‘ fairly debatable ’ ’, the legislative judgment must be allowed to control (Euclid v. Amber Realty Co., 272 U. S. 365, 388 supra; Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121; Shepard v. Village of Skaneateles, supra; Town of Islip v. Summers Coal & Lbr. Co., 257 N. Y. 167, 169, 170; Matter of Wulfsohn v. Burden, 241 N. Y. 288, 296-297). “ The correct rule to apply where ‘ underlying questions of fact may condition the constitutionality of legislation of this character ’ is to uphold the presumption of constitutionality in the absence of ‘ some factual foundation of record for overthrowing ’ it. (O'Gorman & Young, Inc., v. Hartford Fire Ins. Co., 282 U. S. 251, 257.) ” (Town of Islip v. Summers Coal & Lbr. Co., supra, p. 170; see, also, Matter of Wulfsohn v. Burden, supra.)
Petitioner further argues that the denial of a permit to him constituted an unlawful invasion by the municipality into a field of regulation fully pre-empted by the Federal Government. The general purposes of the Communications Act of 1934 and of regulation of radio communication in particular are set forth in title 47 of the United States Code (§§ 151, 301). Under this general authority, the Federal Communications Commission issued a series of regulations governing amateur radio operators (Code of Fed. Reg., tit. 47, §§ 12.0-12.257). Among these regulations is subdivision (a) of section 12.60 which provides so far as pertinent here: “ No new antenna structure shall be erected for use by any station in the Amateur Radio Service, * * * without prior approval by the Commission, in any case when * * * the antenna structure proposed to be erected will exceed an overall height of 170 feet above ground level ”.
Petitioner’s argument that this regulation has totally excluded all State and municipal governments from the right to regulate the height of proposed antennae is not well taken. The area of Federal pre-emption in the field has been held not to include disputes as to contracts of the licensees (Regents v. Carroll, 338 U. S. 586). In an earlier case, Radio Station WOW v. Johnson (326 U. S. 120, 128, 131-132), it was pointed out *391 that States still retained some jurisdiction over the physical property of the licensed radio station. In the instant case, local regulation does not conflict with the purposes of Federal legislation. The Federal Government, in granting amateurs licenses, is concerned primarily with their competency. Limitations with respect to the equipment they may use are uniform and nationwide, and are not attempted to he related to their danger in their particular locale. Thus, if the regulation referred to above on the subject of antennae were exclusive, every amateur could build a 170-foot tower on his premises, without even consulting the Federal Communications Commission.
Particularly in dealing with amateur radio, which is often carried on in the amateur’s home, problems arise that require for their proper solution thorough consideration of the particular area and surroundings. Regulation of these matters may well be left to local regulation without impairment of the national interest in the matter (Parker v. Brown, 317 U. S. 341, 362-363). This conclusion is further borne out by the lack of a clear intent in the statute to remove from local administration matters concerning the public safety.
It should be noted that the denial of a permit to the petitioner in this case does not prevent him from exercise of his federally given right to operate a radio station, since he may do so with another kind of antenna, and such denial does not conflict with Federal law, unless, despite the zoning ordinance, the regulation be read to give any amateur the absolute right to erect a 170-foot tower as an antenna wherever his station is located.
The cases cited by petitioner in support of pre-emption are readily distinguishable. Federal Radio Comm. v. Nelson Bros. Bond & Mtge. Co. (289 U. S. 266) does not involve any State or municipal action; it is merely a review of an F. R. C. determination. In Dumont Labs. v. Carroll (184 F. 2d 153) a State attempted to impose its standards on program content, clearly a matter for Federal regulation exclusively. In Whitehurst v. Grimes (21 F. 2d 787) and Tampa Times Co. v. Burnett (45 F. Supp. 166) States tried to impose license taxes upon stations operating in interstate commerce. In National Broadcasting Co. v. Board of Pub. Utilities Comrs. (25 F. Supp. 761) a State act was held not to require N. B. C. to obtain a certificate of public convenience from the Now Jersey Public Utility Com *392 missioners before constructing and operating a transmitter for which it had obtained Federal Communications Commission approval. The only holding in the case was that since N. B. C. was to be engaged in interstate commerce, and the statute was concededly unconstitutional as applied to broadcasting in interstate commerce, the court need not decide whether the statute is invalid as applied to intrastate broadcasting.
The recent case of Allegheny Airlines v. Village of Cedarhurst (238 F. 2d 812) is also not apposite here. In that case, a municipality enacted an ordinance in direct conflict with Federal regulations on the subject. The subject matter of the Federal regulations was the minimum safe altitudes for landing at airfields, clearly a subject within the province of the experienced Civil Aeronautics Board, and one to be dealt with in a uniform manner. The court which affirmed the decision invalidating the village ordinance pointed out the variable factors which had to be taken into consideration in deciding the precise safe height for landing. It is significant that all of these variables relate to decisions which the court said could ‘‘ only be made by some specially equipped administrative agency” (238 F. 2d 817) dealing with the problems of air flight. In the present case, the Federal Communications Commission is not the appropriate expert body to determine local zoning problems.
In summary, then, we conclude that, on this record, petitioner has failed to establish that the proposed 44-foot rotary beam antenna tower is an accessory use customarily incidental to a highly classified residential area and that the ordinance in question is unconstitutional as construed and applied. It may well be that on an appropriate application and a more fully developed record petitioner may be able to demonstrate to the board that a permit should be issued here, if not as of right, then by way of a variance.
Accordingly, the order appealed from should be affirmed, with costs.