OPINION OF THE COURT
J. Radley Herold, J.
In a case of first impression, this court holds that the Zoning Board of Appeals of the Town of Lewisboro, New York *995 erred in its determination and direction that a building permit be issued for the erection of a large skateboarding ramp on residential property in its finding that the erection of such a structure was proper as a matter of right as an accessory use which was customarily incidental to the primary residential use of the land under the town Zoning Ordinance.
This is a CPLR article 78 proceeding whereby petitioners, James R. and Donna C. Collins (Collins), seek a judgment which would reverse, annul and set aside a determination made by respondent, Town of Lewisboro, New York, Zoning Board of Appeals (ZBA). In this regard, on June 26, 1991, the ZBA, by a 3 to 2 vote determined, inter alla, that the erection of a skateboarding ramp was a "permitted accessory structure” which was "customarily incidental to the principal permitted use” of a residence under the Zoning Ordinance of the Town of Lewisboro (Town). In accordance with its decision, the ZBA directed that the Town’s Building Inspector, corespondent Murray Crandell, issue a conditional building permit to corespondents Charles Fred Yackulic and Margaret N. Yackulic, also known as Margaret Notley (Yackulic). The ZBA’s decision was filed with the Town Clerk’s office on July 16, 1991, however, by order of this court dated July 18, 1991, and by the stipulation of the parties, construction of the skateboarding ramp was stayed pending the determination of this proceeding.
Petitioners’ primary contentions are that, in reaching this determination, the ZBA acted in an arbitrary and capricious manner and that its determination was not supported by substantial evidence. Moreover, petitioners also contend that the ZBA determination was made in violation of lawful procedure, was affected by an error of law and that ZBA failed to perform a duty enjoined upon it by law, acting in excess of its jurisdiction. Respondents have denied these allegations and contend that the ZBA determination was supported by substantial evidence.
With respect to petitioner’s contention that the ZBA determination was not supported by "substantial evidence” (see, CPLR 7803 [4]), this court’s review is limited to a consideration of whether there is "proof within the whole record of such quality and quantity as to generate the conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically” (see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 181). *996 Since a determination involving substantial evidence is one of law, the court may not substitute its own judgment for that of the hearing agency or administrative body (see, Matter of Purdy v Kreisberg, 47 NY2d 354, 358). But such a test does require a review of the entire record and a determination as to whether or not there is a "rational basis” in it for the findings of fact supporting the decision of the agency or board (see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra, at 182; see also, Matter of Pell v Board of Educ., 34 NY2d 222; Siegel, NY Prac, § 560 [2d ed 1991]).
Moreover, petitioner’s contention that the ZBA’s decision was "arbitrary and capricious” (see, CPLR 7803 [3]) requires an examination of the record upon which the decision was made. In this regard a determination is "arbitrary and capricious” if it is made "without sound basis in reason * * * without regard to the facts” (see, Matter of Pell v Board of Educ., supra, at 231).
These two standards require the same analysis by the court, inasmuch as "[rationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard” (supra, at 231; see also, Siegel, op. cit., § 561, at 881-882). A review of the record indicates the substance of the evidence upon which the ZBA made its determination:
The respondent Yackulic’s residence is situated on 3.8 acres located in a zoned 2-acre residential district (R2A) on Todd Road in Katonah, Town of Lewisboro, New York. Petitioners Collins are adjoining property owners. In December of 1990 the Yackulics commenced to assemble a large wooden skateboard ramp for erection in the back of their home. The ramp is constructed from plywood sheets with a masonite surface. The ramp is "L” shaped in configuration and incorporates a half-pipe type design which allows a skater to descend and ascend over the half-arc surface. The ramp’s dimensions vary from 3 to 4 feet in height, 8 to 12 feet in width and 28 to 36 feet in length. The skateboard ramp was to be used by the Yackulics’ two teen-age sons and their friends to practice their skills in skateboarding.
Soon after the assembly of the ramp commenced, the Town Building Inspector, corespondent Crandell, informed the Yackulics that the erection of the ramp would require a building permit. However, when the application was made, Crandell denied it on December 14, 1990, stating that the ramp was a *997 "structure”[1] which was not a "customary [sic] accessory use” under section 321.4[2] of the Town Zoning Ordinance.
On April 22, 1991, the Yackulics appealed Crandell’s determination to the ZBA, seeking, in the alternative, a variance under section 321.4 of the code. The ZBA conducted open hearings on May 22 and June 26, 1991. Moreover, ZBA members personally visited the proposed site, adjoining properties and two skateboard sites of similar design located out of the Town. In addition, the ZBA noted that there was no wetlands issue involved in the application and that for purposes of the State Environmental Quality Review Act (ECL 8-0101 et seq.) the building of the ramp was a type II exempt action for which no environmental impact statement was needed. Finally the ZBA considered correspondence from local citizens both for and against the proposed project.
During the course of its hearings the citizens of the community, including the Yackulics and Collinses, made known their considerations and concerns to the ZBA which included the following general topics: Potential noise arising from the use of the ramp and methods to lessen the noise; neighborhood appearances and the effect or lack thereof on local property values; lighting used for the ramp and its proposed hours of use; safety concerns of the children of the applicants and their friends; the possibility of increased traffic in the neighborhood and evidence that the Yackulics’ son would use the ramp to practice and perfect his skills in the "sport” of skateboarding which was alleged to be of some popularity nationwide.
In its June 26, 1991 determination, the ZBA found, inter alia, that, based upon the evidence submitted: there was no substantive wetlands issue which would prevent the erection of the ramp; there was no proof that the erection of the ramp *998 would result in a diminution of property values; there is a risk of injury to those using the ramp, however the Yackulics indicated that they would provide insurance and supervision of the ramp’s use. In this regard, the ZBA found insufficient evidence to show that there was any indication of traffic hazards to either motorists or skateboarders; while the evidence demonstrates that use of the ramp would be noisy, a slight design change and the addition of carpeting would significantly reduce the noise. However, no expert evidence was adduced as to the actual noise level or the sufficiency of the proposed noise buffers. In this regard, it was noted that the Town has a separate noise ordinance which would apply to such concerns in any event. Moreover, it was agreed by the applicants and the ZBA that use of the ramp would be limited to the hours between 10:00 a.m. and 7:00 p.m.
Finally, the ZBA determined that the erection of the ramp qualified as the building of a "structure” under section 720 of the Zoning Ordinance, inasmuch as its total square footage exceeded 64 square feet (see, n 1, supra). Having properly determined that the ramp qualified as a "structure”, the ZBA then found that the skateboard ramp qualified as a recreational use of the property which was customarily incidental to the permitted principal use of the residence. In this regard the ZBA noted the proliferation of skateboarding as a "widespread and rapidly growing sport” and that while the ramp would be the first in Lewisboro there are other ramps in nearby towns. Having determined that the ramp was customarily incidental to the principal permitted use, the ZBA found that no variance was needed and directed that a conditional building permit be issued.[3]
*999 In reaching its determination that a skateboarding ramp of the size and dimensions contemplated was "customarily incidental” as a recreational use, the ZBA reversed the priorities of its own Zoning Ordinance. Under Zoning Ordinance § 321.4 it is clear that only those recreational uses as are customarily incidental to the principal use are allowed. The Board reasoned that inasmuch as skateboarding was recreational it was a permitted accessory recreational use which was customarily incidental to a residence. In this regard the ZBA relied upon the fact that they had been presented with copies of various skateboarding magazines and other articles which indicated that skateboarding clinics were offered in other jurisdictions to come to the conclusion that skateboarding, being a sport, was recreational in nature and, therefore, a permitted recreational use notwithstanding the "customarily incidental” requirement. In this regard the Board stated: "While the applicant’s skateboard ramp may be the first in the Town of Lewisboro, it is not the first in the area. Both the quantity and quality of the materials submitted by both sides clearly indicate that skateboarding is a widespread and rapidly growing sport”. Moreover, the ZBA noted the Chairman’s opinion that items such as skateboard ramps may become "customary” by a gradual increase in use.
In support of its position the ZBA adopted the view that "the pivotal test as to whether an accessory use, meaning a use subsidiary to that of the primary use of the property falls within the rubric of customarily incidental is not whether other land owners in the municipality are engaged in similar activities but whether such accessory use can be deemed to be normally incidental to the residential use.” (See also, 6 Rohan, Zoning and Land Use Controls § 40A.04 [3].) With due respect to the opinion of the ZBA and the authority cited, such is not the law of New York State. The ZBA, for what it considers compelling reasons, engaged in a legislative function which is beyond its authority. In this regard, "[i]t is clear that, in the conduct of a hobby, the scale of its operation may well carry it beyond what is customary or permissible” (see, Matter of Presnell v Leslie, 3 NY2d 384, 387-388; Matter of Porianda v Amelkin, 115 AD2d 650, 651 [2d Dept 1985]).
In determining the application, respondents Yackulic were required to present a sufficient showing that it was customary to have structures of the kind they sought to erect on their property or that such structure was of a kind which might commonly be expected by neighboring property owners (see, *1000 Matter of Presnell v Leslie, supra, at 388). In this regard, the proof is clear that no other such structure exists in the Town of Lewisboro. Moreover, evidence presented to the ZBA indicates that the adjacent Town of Somers does not consider such skateboard ramps as an "accessory use” and that, while the Board did observe two similar ramps in the adjacent Town of Bedford, their legal status wasn’t made clear. It can hardly be said from the evidence presented that one’s neighbors might expect a structure such as this to be erected. Assuming, arguendo, that respondents and others may someday attain legal proof necessary for a variance for such a use, it is possible that large skateboard ramps may be "customarily incidental” to homes in Lewisboro. This, however, is not yet that day.
In sum, the evidence before the ZBA of the erection and use of skateboard ramps of this size in the Town of Lewisboro and adjacent communities was not sufficient to demonstrate their widespread existence, much less that such structures are customarily found in such zones. This failure of proof is fatal (see, Matter of Porianda v Amelkin, supra, at 651).
Thus, the determination of the ZBA that the "structure” comprising the skateboard ramp was a permitted accessory use which is "customarily incidental” to the primary residential use under its zoning ordinance was both arbitrary and capricious, inasmuch as it was made without a sound basis and reason and there was not "substantial evidence” before the ZBA upon which such a conclusion could rationally be made by the ZBA (see, CPLR 7803 [3], [4]; 300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra; Matter of Pell v Board of Educ., supra). Accordingly the determination of ZBA dated June 26, 1991 which directed the issuance of a building permit as of right of respondent Yackulic is ordered annulled and vacated forthwith.
Finally, it is clear that the ZBA did not reach the merits of the Yackulics’ alternative request for a variance or to grant such variance. Having found that the ramp was a structure customarily incidental to the permitted use, the ZBA stated "no variance is required”. In light of this court’s decision annulling the ZBA’s determination under CPLR 7803 (3), (4), petitioner’s remaining requests are denied as moot.
Petition granted and judgment for petitioner to the extent that respondent ZBA’s determination of June 26, 1991 is annulled and vacated.

. Section 720 of the Zoning Ordinance sets forth definitions and thereunder defines "Structure” as being: "Anything constructed or erected, the use of which requires location on or under the ground or attachment to something having location on the ground. 'Structure’ includes any building or tennis court but does not include anything less than sixty-four (64) square feet in area and eight (8) feet in height.”

. Section 321.4 of the Zoning Ordinance sets forth those uses which are permitted as accessory to permitted principal uses, and allows "Uses or structures customarily incidental to any permitted principal use provided that such accessory use shall not include any activity commonly conducted for gain except as hereinafter excepted or any private way or walk giving access to such activity.” (Emphasis added.) Moreover, section 321.4 (5) of the code permits "swimming pools and other accessory recreational facilities for the use of the residents of the premises” (emphasis added).

. The ZBA imposes the following conditions for the ramp’s building permit:
1. The surface shall be 3/8-inch masonite.
2. All sides and ends of the structure from top surface to grade shall be enclosed.
3. The ends of the skateboard ramp shall be insulated on the inside by installation of insulation bats.
4. The underside of the skating area shall be carpeted.
5. There shall be no additional lighting fixtures and no additional lumens in existing lighting fixtures at the site.
6. Hours of use shall be from 10:00 a.m. to 7:00 p.m.
7. There shall be erected a six-foot stockade fence within six feet of both ends of the ramp to act as a further noise baffle.
8. Use of a skateboard ramp shall be supervised by an adult.
9. Skateboard launching ramps shall not be used at the site at any time.