OPINION OF THE COURT
 

 Wesley, J.
 

 In 1993, Fordham University applied to the New York City Department of Buildings (DOB) for a permit to build a new broadcasting facility and attendant tower as an accessory use on its Rose Hill campus. The DOB issued Fordham a building permit. After construction began, the New York Botanical Garden objected to the issuance of the permit. The DOB Commissioner determined that the radio station and accompanying tower together were an accessory use within the meaning of section 12-10 of the New York City Zoning Resolution. The Botanical Garden appealed to the Board of Standards and Appeals (BSA) which, after reviewing numerous submissions from both parties and holding two public hearings, unanimously confirmed the Commissioner’s determination. The issue before this Court is whether that determination was arbitrary or capricious; we agree with both lower courts that it was not.
 

 Fordham University was founded in 1841, at the site of the current main campus, as St. John’s College. Shortly thereafter, the Jesuits assumed administration of the institution; it took its current name in 1907. The main campus is situated on approximately 80 acres in the Rose Hill section of the North Bronx, directly adjacent along its eastern border to the Botanical Garden. The campus falls within an R6 zoning district (medium density residential). The University offers a wide va
 
 *417
 
 riety of graduate and undergraduate studies, including degree programs in communications and media studies. As part of these programs, the University offers courses such as “Introduction to Radio,” “Radio News Techniques,” “Broadcast News Operations” and an internship at the University’s radio station, WFUV.
 

 Fordham has operated WFUV as an on-campus, noncommercial, educational radio station since 1947. WFUV is affiliated with National Public Radio and has operated at its current signal strength of 50,000 watts since 1969. The station’s current antenna extends 190 feet above ground level and is situated atop the University’s Keating Hall, which also houses WFUVs broadcast studio. In 1983, Fordham explored new sites for the antenna. On February 17, 1993, it filed an application with the DOB to construct a new one-story radio transmitting building and an accessory 480-foot (approximately 45-story) radio tower midway along the eastern border of the campus. The application correctly identified the University as a Use Group 3 facility, a permitted use within R6 zoning districts
 
 (see,
 
 NY City Zoning Resolution § 22-13), and described the tower and radio station as an accessory use to the principal use of the property as an educational institution. DOB approved the project and issued a building permit on March 1, 1994; construction began shortly after the permit was renewed on May 13, 1994.
 

 By letter to the DOB Commissioner dated June 30, 1994, the Botanical Garden, which is located across a four-lane thoroughfare from the tower site, objected to the construction and its classification as an “accessory use” under the Zoning Resolution. By that time, construction of the tower was partially complete, at a cost to Fordham of $800,000. On July 1, 1994, the DOB Commissioner issued a stop work order pending resolution of the objection.
 

 By letter of September 12, 1994, the Commissioner informed Fordham that the DOB had determined that the tower did in fact constitute an accessory use within the meaning of Zoning Resolution § 12-10. In response to the Botanical Garden’s request, the Commissioner issued a final determination confirming the decision on November 7, 1994. The Botanical Garden filed an administrative appeal with the BSA on December 6, 1994. After reviewing substantial submissions, and holding two public hearings, the BSA affirmed the Commissioner’s determination. The BSA found that Fordham’s operation of a radio station of this size and power was “clearly
 
 *418
 
 incidental to the educational mission of the University,” and that it was “commonplace” for universities to operate stations “at or near the same power level.” The BSA expressly ruled that “the sole issue * * * is whether the proposed tower is ‘incidental to’ and ‘customarily found’ in connection with the University and not whether the tower could be smaller or relocated to another site.”
 

 The Botanical Garden then commenced this CPLR article 78 proceeding to annul the BSA’s determination that the radio station and tower constituted an accessory use of Fordham’s property. The trial court dismissed the petition, holding that the BSA’s determination was rational and supported by substantial evidence. The court noted that aesthetics appeared to be at the heart of petitioner’s concerns, and implicitly rejected this as a valid basis for labeling the BSA’s determination arbitrary and capricious. The court further noted that the record was devoid of any proof that the Botanical Garden would suffer any economic harm, that the tower presented any sort of danger or that the tower would prompt an undesirable change in the character of the neighborhood. The court found it significant that Federal policy and Federal Communications Commission (FCC) regulations encourage local authorities to accommodate radio communications, and that FCC guidelines on radiation exposure levels made a new tower a practical necessity. The court noted that it would be “an arrogant abuse of judicial power” to annul the BSA’s determination after its expert members had considered all the relevant factors and decided that the tower was a proper accessory use. Finally, the court noted that petitioner’s application suffered from “a taint of laches,” in that it had waited until the tower was half complete before taking action. The Botanical Garden appealed.
 

 The Appellate Division unanimously affirmed. The Court held that:
 

 “Respondent’s determination is supported by substantial evidence that it is commonplace for universities to own and operate radio stations many of which operate at or near the same power level of the proposed radio station, and is rationally based on a statute that specifically lists radio towers as an accessory use.” (238 AD2d 200.)
 

 We granted petitioner leave to appeal, and now affirm.
 

 This Court has frequently recognized that the BSA is comprised of experts in land use and planning, and that its in
 
 *419
 
 terpretation of the Zoning Resolution is entitled to deference. So long as its interpretation is neither “irrational, unreasonable nor inconsistent with the governing statute,” it will be upheld
 
 (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,
 
 62 NY2d 539, 545). Of course, this principle does not apply to purely legal determinations; where “the question is one of pure legal interpretation of statutory terms, deference to the BSA is not required”
 
 (Matter of Toys “R” Us v Silva,
 
 89 NY2d 411, 419). However, “when applying its special expertise in a particular field to interpret statutory language, an agency’s rational construction is entitled to deference”
 
 (Matter of Raritan Dev. Corp. v Silva,
 
 91 NY2d 98, 102).
 

 Here, the BSA determined that Fordham’s radio station and tower constituted an “accessory use” within the meaning of Zoning Resolution § 12-10. That section provides that an accessory use:
 

 “(a) Is a
 
 use
 
 conducted on the same
 
 zoning lot
 
 as the principal
 
 use
 
 to which it is related (whether located within the same or an
 
 accessory building or other structure,
 
 or as an
 
 accessory use
 
 of land) * * * and
 

 “(b) Is a
 
 use
 
 which is clearly incidental to, and customarily found in connection with, such principal
 
 use-,
 
 and
 

 “(c) Is either in the same ownership as such principal
 
 use,
 
 or is operated and maintained on the same
 
 zoning lot
 
 substantially for the benefit or convenience of the owners, occupants, employees, customers, or visitors of the principal
 
 use.”
 

 Thus, Zoning Resolution § 12-10 sets forth a three-prong test for determining whether a use qualifies as an accessory one: first, it must be conducted on the same zoning lot as the principal use; second, it must be “clearly incidental to, and customarily found in connection with” the principal use; and third, there must be unity of ownership, either legal or beneficial, between the principal and accessory uses. Petitioner acknowledges that the first and third prongs are satisfied here. It takes issue, however, with the BSA’s determination that a tower of this size is clearly incidental to, and customarily found in connection with, the principal use of this land as a university campus. Petitioner also maintains that this question, particularly the “customarily found” inquiry, presents an issue of pure
 
 *420
 
 statutory construction and therefore this Court should not give any deference to the BSA determination. We disagree.
 

 Whether a proposed accessory use is clearly incidental to and customarily found in connection with the principal use depends on an analysis of the nature and character of the principal use of the land in question in relation to the accessory use, taking into consideration the over-all character of the particular area in question
 
 (see, Matter of Hassett v Horn,
 
 23 NY2d 745,
 
 revg
 
 29 AD2d 945
 
 on the dissent below).
 
 This analysis is, to a great extent, fact-based
 
 (Matter of Exxon Corp. v Board of Stds. & Appeals,
 
 128 AD2d 289, 298 [“the requirement that the proposed use be one customarily found in connection with, and incidental to, (the principal use) poses a factual issue for Board resolution”]). Moreover, such an analysis is one that will clearly benefit from the expertise of specialists in land use planning. Pursuant to section 659 (b) of the New York City Charter, the BSA includes a city planner, an engineer and an architect. These professionals unanimously determined that the radio station and the proposed tower are incidental to, and customarily found in connection with, an educational institution. This Court may not lightly disregard that determination.
 

 The Botanical Garden nonetheless argues that the “customarily found” element of the definition of accessory use itself poses a purely legal question, relying on
 
 Matter of Teachers Ins. & Annuity Assn. v City of New York
 
 (82 NY2d 35). We did hold in
 
 Teachers
 
 that, in an appropriate case, this Court will parse various sections of a statute or regulation, and identify certain sections as requiring deference to agency experts, while other sections present questions of pure legal interpretation. In
 
 Teachers
 
 we noted that whether a restaurant was of “special historical or aesthetic interest” (Administrative Code of City of NY § 25-301 [b]) to justify its designation as a landmark was an interpretation and application of the Landmarks Law better left to the expertise of the Landmarks Preservation Commission. However, the “jurisdictional predicate” that the restaurant would only be given landmark status if it was “ ‘customarily open or accessible to the public’ ” was a matter of pure legal interpretation
 
 (id.,
 
 at 41-42). The Court in
 
 Teachers
 
 was not called upon to examine whether there was record support for deciding the “jurisdictional predicate.” The issue was a straightforward legal one: does a restaurant fall within the coverage of the statute — i.e., areas that are customarily open or accessible to the public.
 

 
 *421
 
 In this case, there is no dispute that radio stations and their attendant towers are clearly incidental to and customarily found on college campuses in New York and all over the United States. The issue before the BSA was: is a station of this particular size and power, with a 480-foot tower, customarily found on a college campus or is there something inherently different in this radio station and tower that would justify treating it differently. This is clearly a fact-based determination substantially different from the law issue presented in
 
 Teachers (supra).
 

 Granting the BSA’s determination its appropriate weight, we cannot say that its classification of the tower as an accessory use is arbitrary or capricious, or not supported by substantial evidence. It must be noted that the Botanical Garden’s initial objection was to the over-all size of Fordham’s radio operations. Petitioner argued before the DOB Commissioner and the BSA that it was not customary, but rather highly unusual, for a university to operate a station which is affiliated with National Public Radio and which broadcasts at a signal strength of 50,000 watts. It argued that the “sheer extent of the operations,” which reached “far beyond the immediate college community” showed that the station was not being operated as an adjunct to University programs, but that it was essentially a commercial enterprise.
 

 In response, Fordham established that it is commonplace for stations affiliated with educational institutions to operate on the scale of WFUV. The University submitted evidence showing that 180 college or university radio stations are affiliated with National Public Radio. (This represents 58% of all NPR affiliates.) Of these, slightly more than half operate at a signal strength of 50,000 watts. Fordham also presented proof that the station was an integral part of the University’s communications curriculum. Finally, Fordham introduced evidence that building this tower was a practical necessity, in order for the station to comply with FCC regulations. This evidence provides a substantial basis for the BSA’s determination that Fordham’s radio operations are of a type and character customarily found in connection with an educational institution.
 

 The Botanical Garden nonetheless maintains that it is not customary for universities to build radio towers of this height in connection with their radio operations. This argument ignores the fact that the Zoning Resolution classification of accessory uses is based upon functional rather than structural specifics. The use found to be accessory here is the operation of
 
 *422
 
 a 50,000-watt university radio station. As set forth above, there was more than adequate evidence to support the conclusion that such a use is customarily found in connection with a college or university. In order to operate such a station, it is necessary to maintain an antenna at a sufficient height to properly radiate that signal. The FCC has determined that broadcasting WFUV’s signal from its current antenna atop Keating Hall has resulted in ground radiation levels which “substantially exceed! ] the Commission’s Radio Frequency Protection Guidelines”
 
 (In re: WFUV [FM],
 
 12 FCCR 6774, 6777;
 
 see,
 
 47 CFR 1.1307 [b]; 1.1310). WFUV therefore cannot receive a license renewal unless and until it moves its antenna to a new location
 
 (id)
 

 *
 

 The specifics of the proper placement of the station’s antenna, particularly the height at which it must be placed, are dependent on site-specific factors such as the surrounding geography, building density and signal strength. This necessarily means that the placement of antennas will vary widely from one radio station to another. Thus, the fact that this specific tower may be somewhat different does not render the Board’s determination unsupported as a matter of law, since the use itself (i.e., radio operations of this particular size and scope) is one customarily found in connection with an educational institution. Moreover, Fordham did introduce evidence that a significant number of other radio stations affiliated with educational institutions in this country utilize broadcast towers similar in size to the one it proposes.
 

 Separation of powers concerns also support the decision we reach today. Accepting the Botanical Garden’s argument would result in the judicial enactment of a new restriction on accessory uses not found in the Zoning Resolution. Zoning Resolution § 12-10 (accessory use) (q) specifically lists
 
 “[ajccessory
 
 radio or television towers” as examples of permissible accessory uses (provided, of course, that they comply with the requirements of Zoning Resolution § 12-10 [accessory use] [a], [b] and [c]). Notably, no height restriction is included in this example of a permissible accessory use. By contrast, other examples of accessory uses contain specific size restrictions. For instance, Zoning Resolution § 12-10 defines a “home occupation” as an accessory use which “[o]ccupies not more than
 
 *423
 
 25 percent of the total
 
 floor area
 
 * * * and in no event more than 500 square feet of
 
 floor
 
 area” (§ 12-10 [home occupation] [c]) and the accessory use of “[l]iving or sleeping accommodations for caretakers” is limited to “1200 square feet of
 
 floor area”
 
 (§ 12-10 [accessory use] [b] [2]). The fact that the definition of accessory radio towers contains no such size restrictions supports the conclusion that the size and scope of these structures must be based upon an individualized assessment of need. The BSA is the body designated to make this determination, and courts may intervene only if its determination is arbitrary or capricious.
 

 The Botanical Garden continues to press the argument that the BSA abrogated its obligation to consider the environmental impact of the tower on an adjoining property by designating the tower an accessory use. The statute has no reference to environmental considerations in defining an accessory use, although it does list radio antennas as one type of an accessory use. The Botanical Garden’s real complaint is the impact of the tower on the unique nature of its buildings and grounds. The Botanical Garden has raised these same concerns with the FCC in the context of the National Historic Preservation Act (16 USC § 470
 
 et
 
 seq.) and that matter is still pending (see,
 
 In re: WFUV [FM],
 
 12 FCCR 6774,
 
 supra).
 
 While we are not unmindful of those concerns, they are simply not part of the legal equation before us.
 

 Matter of Presnell v Leslie
 
 (3 NY2d 384), relied upon heavily by petitioner, does not dictate a contrary result. The petitioner in
 
 Presnell,
 
 an amateur radio operator, applied for a building permit to construct a 44-foot radio tower. He claimed that he was entitled to a permit as of right, because the tower was an accessory use to the principal use of the lot as his residence. The Village Board of Trustees denied the application, finding that the tower was neither an accessory building nor use customary to a residential dwelling. Presnell challenged this determination. The trial court dismissed the petition and the Appellate Division affirmed. This Court affirmed, holding that “it cannot be said as a matter of law that the erection of a 44-foot steel tower in a compact residential area of a suburban community, where dwellings are restricted in height to 35 feet * * * is a customarily incidental use of residential property, or one which might commonly be expected by neighboring property owners”
 
 (id.,
 
 at 388).
 

 Presnell (supra)
 
 is both factually and legally distinguishable from the case at bar. The homeowner in
 
 Presnell
 
 claimed the
 
 *424
 
 right to build his radio tower in the pursuit of a hobby. This Court ruled that the municipality could legitimately conclude that the scope of the proposed operation took it outside the realm of a simple pastime. As we stated in Presnell, “[i]t is clear that, in the conduct of a hobby, the scale of its operation may well carry it beyond what is customary or permissible” (3 NY2d, at 387-388). Here, we are concerned not with a personal hobby carried on as an incident to a residential premises, but with a legally recognized institutional use that is integral to the educational mission of this University. As noted at. the outset, Fordham offers both bachelor’s and master’s degrees in communications and media studies, and WFUV is a key part of that curriculum. Fordham submitted ample evidence showing that the scope of its radio operations is not outside the norm for an educational institution and that the station has operated at its current power levels for almost 30 years.
 

 In addition,
 
 Presnell (supra)
 
 is distinguishable because there, the municipality had denied the permit. Thus, we specifically limited our scope of review to whether that determination was unsupported “as a matter of law” (3 NY2d, at 388). We did not hold that the municipality could not have determined that the tower was a permissible accessory use. We afforded its determination the proper level of respect, reviewable only for clear legal error. While we did not articulate this as an arbitrary and capricious or substantial evidence question, this was the standard effectively employed. Here, the BSA determined that the station and tower did constitute an accessory use. Thus, rather than mandating reversal,
 
 Presnell
 
 actually lends support to Fordham’s position that the BSA’s determination should be upheld as an appropriate and well-supported exercise of its power to decide what does or does not constitute an accessory use under the pertinent zoning ordinance.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa and Ciparick concur; Judges Smith and Levine taking no part.
 

 Order affirmed, with costs.
 

 *
 

 FCC compliance concerns, as well as concerns with respect to the structural integrity of the current Keating Hall site, were apparently the primary impetus for Fordham’s decision to build a new tower.