David DYKSTRA, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE,
LAND USE DIVISION,
Appellee.**

No. S–10512.

Supreme Court of Alaska.

Jan. 2, 2004.

David Dykstra, pro se, Anchorage.

Linda J. Johnson and Joyce W. Johnson, Deputy Municipal Attorneys, and William A. Greene, Municipal Attorney, Anchorage, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

# I. INTRODUCTION

The Municipality of Anchorage's zoning board of examiners and appeals affirmed an enforcement order directing David Dykstra to stop using the area surrounding his four-plex as a storage yard for cars. Dykstra appeals, contending that collecting and storing cars is a permitted accessory use under zoning ordinances governing R–3 property; alternatively, he argues, the ordinances describing accessory uses are unconstitutionally vague. We reject Dykstra's claim of vagueness and find ample evidence to support the board's decision that his car collection exceeded the scope of a permissible accessory R–3 use. But we nonetheless hold that, before enforcing its order, the board must give Dykstra reasonable notice of the steps need-ed to correct his violation. Because the board did not adopt specific findings, as required by Anchorage's zoning code, it failed to give Dykstra adequate guidance. We thus remand for entry of findings.

# II. FACTS AND PROCEEDINGS

David Dykstra owns a four-plex in an Anchorage neighborhood zoned as an R–3 multiple-family residential district. Dykstra collects cars as a hobby and regularly keeps twenty or more cars on his property and in the adjoining right of way. This car collection has been the source of tension between Dykstra and his neighbors for several years. In response to neighborhood complaints, the Municipality of Anchorage's Building Safety Division concluded that Dykstra was using his property as a storage yard, in violation of the ordinances governing permissible R–3 property uses. The division sent Dykstra an enforcement order informing him of its conclusion, directing him to discontinue using the property as a storage yard, and requiring him to submit for municipal review and approval a written plan to abate the violation.

Dykstra petitioned the zoning board of examiners and appeals, asking it to review the enforcement order. After conducting a hearing, the board denied Dykstra's petition. Although the board notified Dykstra that it would approve written findings at a later meeting, the board evidently never adopted findings. Dykstra appealed to the superior court, which affirmed the board's decision.

Dykstra appeals.

# III. DISCUSSION

The controversy in this case arises from municipal zoning ordinances describing permissible uses for Dykstra's property, which is located in a R–3 multiple-family residential district. Anchorage Municipal Code (AMC) 21.40.050 governs R–3 districts. This provision defines R–3 use districts as primarily residential in character, stating that they are "intended to include urban and suburban single-family, two-family and multiple-family residential uses with medium population den-

sities."[1] Subsection .050(B) describes the principal uses allowed in these districts; subsection .050(C) lists permissible accessory uses; and subsection .050(D) sets out conditional uses.

The principal uses for R–3 districts include various kinds of family dwellings and structures directly related to family living, such as schools, parks, libraries, day care facilities, and churches.[2] The R–3 list of permissible "accessory" uses encompasses "[p]rivate storage in yards of noncommercial equipment, including noncommercial trucks, boats, aircraft, campers or travel trailers, in a safe and orderly manner and separated by at least five feet from any property line."[3] The zoning code defines "accessory" uses to mean uses that are "customarily subordinate or incidental to and located on the same lot with a principal use, building or structure."[4]

Under the zoning code, any use listed as a permitted, accessory, or conditional use in one district but not in another becomes a prohibited use wherever it is not listed.[5] The zoning code lists open storage yards as a permitted principal use in I–1—light industrial—districts.[6] The code defines "storage yard" to include "any ... portion of a lot which is used for the sole purpose of the outdoor storage of fully operable motor vehicles ... in an orderly manner."[7] Since storage yards are listed as permitted uses in I–1 districts but are not listed under AMC 21.40.050's provisions governing R–3 districts, they are prohibited uses in R–3 districts. In the present case, the municipality reasoned that Dykstra was storing too many cars for an accessory use and was effectively running a storage yard, so he was using his property for a prohibited use.

On appeal, Dykstra challenges the municipality's evidence and insists that his hobby of collecting cars amounted to a permitted ac-

cessory use of his property; he also alleges that the municipality's zoning provisions are unduly vague, thus violating his constitutional right to due process.

■ We reject at the outset Dykstra's claim that the zoning ordinances are unconstitutionally vague. As we have recognized on prior occasions, a statute cannot be deemed impermissibly vague merely because its meaning does not seem immediately obvious and is susceptible to reasonable dispute:

> [T]he fact that people can, in good faith, litigate the meaning of a statute does not necessarily (or even usually) mean that the statute is so indefinite as to be unconstitutional. The question is whether the statute's meaning is unresolvably confused or ambiguous *after* it has been subjected to legal analysis. If study of the statute's wording, examination of its legislative history, and reference to other relevant statutes and case law makes the statute's meaning clear, then the statute is constitutional.[8]

■ In seeking to determine whether an apparently confusing statute is impermissibly vague, we must thus look beyond its literal terms, asking whether careful study of its history, relevant case law, and other statutory provisions can help establish a reasonably clear meaning. And even when these sources fail to resolve confusion, we will not invalidate a disputed statute as it applies to the case before us when the facts leave "no question as to [the statute's] applicability to the particular offense" and the statute can be given a narrowing construction to ensure that "in the future the type of offense coming within its purview may be reasonably understood."[9]

■ Applying these ground rules, we find no impermissible vagueness in AMC

---

1. AMC 21.40.050(A) (1996).

2. *See* AMC 21.40.050(B)(1)-(11).

3. AMC 21.40.050(C)(4).

4. AMC 21.35.020.

5. AMC 21.40.015(B).

6. AMC 21.40.200(B)(2)(n)(1).

7. AMC 21.35.020.

8. *De Nardo v. State*, 819 P.2d 903, 908 (Alaska App.1991).

9. *Holton v. State*, 602 P.2d 1228, 1236 (Alaska 1979) (citing *Stock v. State*, 526 P.2d 3, 8 (Alaska 1974)).

21.40.050's description of a permissible accessory use. As already mentioned, this provision unquestionably allowed Dykstra to store cars on his property, but only to the extent that his actions amounted to an "accessory use." [10] The zoning code has expressly limited the permissible bounds of an accessory use, defining it as a use that can be considered "customarily subordinate or incidental to and located on the same lot with a principal use, building or structure." [11] And the code leaves no doubt concerning the purpose these provisions serve in an R–3 district: "to protect, preserve and enhance the primarily residential character of the district." [12]

The key issue, then, is whether existing law defines a reasonably clear point at which storing cars at a residence ceases to be an incidental use and begins to conflict with a family neighborhood's primarily residential character. This issue appears to be one of first impression, both in Alaska and, more specifically, under Anchorage's zoning code. But case law elsewhere provides concrete guidance concerning the usual limits of "accessory use." The term is widely used in other jurisdictions, where cases uniformly give accessory use a fairly narrow meaning.

For example, cases speak of an accessory use as one that is "occasioned by or dependent upon the residential use" and one that is "minor in relation to the primary use." [13] Other courts have also considered whether specific levels of use qualify as accessory use. Their decisions generally recognize that even customarily acceptable accessory uses, such as common hobbies, have limits. For exam-

ple, in *Colts Run Civic Ass'n v. Colts Neck Township Zoning Board of Adjustment,* 315 N.J.Super. 240, 717 A.2d 456 (1998), a New Jersey court found that keeping pets was a customary accessory use and that maintaining a racing pigeon coop was a permissible form of that use. [14] But the court nevertheless warned that "such uses are not without limitation, which is reached when the use impairs the residential character of the neighborhood." [15]

Another helpful New Jersey case involved the storage of four older, unlicensed cars on a residential property. [16] The borough there conceded that it had no evidence of commercial activity, but it nonetheless argued that vehicle storage is only permissible in commercial districts. [17] Rejecting this argument, the court held that keeping cars as a hobby amounts to a valid incidental use as long as it "is not of such a nature, or [pursued] to such an extent, as to impair the residential character of the neighborhood." [18] Noting that two- and three-car families are commonplace, the court concluded that parking one or two additional cars at a residence "cannot be construed as an extension of this hobby or habit to such a degree as to impair the residential character of the district." [19]

Applying this approach, other courts have not hesitated to find that accessory-use limitations were violated when residential property owners carried common hobbies to uncommon extremes. For instance, the New York Court of Appeals affirmed a decision denying an application to erect a forty-four-

10. AMC 21.40.050(C)(4).

11. AMC 21.35.020(B).

12. AMC 21.40.050(A).

13. *See, e.g., Perron v. City of Concord,* 102 N.H. 32, 150 A.2d 403, 406 (N.H.1959); *see also* 83 AM JUR. 2d *Zoning and Planning* § 160 ("The phrase 'incidental and subordinate' in a zoning ordinance requires that an accessory use be minor in relation to the permitted use and that it bear a reasonable relationship to the primary use."); *Lawrence v. Zoning Bd. of Appeals,* 158 Conn. 509, 264 A.2d 552, 554 (1969) (defining accessory use as being one that is subordinate and minor in significance and having a reasonable relationship with the primary use), *quoted in Henry v. Bd. of Appeals,* 418 Mass. 841, 641

N.E.2d 1334, 1336 (1994); *see also Becker v. Town of Hampton Falls,* 117 N.H. 437, 440, 374 A.2d 653 (1977) (requiring an accessory use to be incidental to or in relation to the permitted use).

14. 315 N.J.Super. 240, 717 A.2d 456, 461–62 (1998).

15. *Id.* at 461.

16. *Borough of Chatham v. Donaldson,* 69 N.J.Super. 277, 174 A.2d 213 (1961).

17. *Id.* at 280, 174 A.2d 213.

18. *Id.* at 282, 174 A.2d 213.

19. *Id.*

foot rotary beam amateur radio antenna tower.[20] Finding it "clear that, in the conduct of a hobby, the scale of its operation may well carry it beyond what is customary or permissible," the court ruled that the proposed tower was not an accessory use customarily incidental to a residential neighborhood.[21] In another helpful case, the Supreme Court of Iowa compared the amount of space allotted to primary and accessory uses of the property in question, holding that a steel storage building erected next to a church in a residential district exceeded the permissible bounds of an accessory building.[22]

These cases illustrate that the Anchorage zoning code's flexible approach to accessory use is neither uncommon nor impermissibly vague; they show that a pliant, objective test of this kind—one that asks whether a reasonable person would consider the particular level of use in question as customary and relatively minor—can be readily understood and applied.

■ In the present case, even accepting Dykstra's view of the facts, we are convinced that abundant evidence supports the conclusion that Dykstra's car collection exceeded the type of relatively minor, customarily accepted, incidental use that an objectively reasonable resident would consider to be compatible with an R–3 district's primarily residential character.

■ We nevertheless decline to affirm the board's decision approving the municipality's enforcement order. Although we have concluded that the evidence establishes a clear violation under any reasonable view of accessory use, it does not necessarily follow that the municipality's enforcement order adequately communicated what Dykstra needs to do to correct his violation. As we have said, Dykstra's case raised an issue of first impression in Anchorage. The municipality has cited no local rulings interpreting An-

chorage's zoning ordinances in comparable situations, so the board has evidently had no prior occasion to clarify the level of incidental car storage that it would consider customary in an Anchorage R–3 neighborhood.

This lack of precedent apparently discouraged Anchorage's building safety enforcement officer from including advice in the enforcement order about corrective measures Dykstra could take to bring the property into compliance with the accessory-use ordinance. The order simply directed Dykstra to prepare a written plan of abatement for municipal review and approval.

Ordinarily, of course, we might reasonably expect a person in Dykstra's shoes to seek guidance in the zoning board's decision on appeal. Indeed, the zoning code calls for such guidance, requiring the zoning board of examiners and appeals to base "every decision" affirming or reversing an enforcement order "on findings and conclusions adopted by the board."[23] The same provision commands that the board's findings "must be reasonably specific so as to provide the community and, where appropriate, reviewing authorities, with a clear and precise understanding of the reasons for the board's decision."[24] Yet despite this mandate, and despite its own written assurance that it would approve written findings in Dykstra's case, the board apparently adopted no findings or conclusions.

Given these circumstances, we think that fairness requires the board to give Dykstra reasonable notice of the kinds of steps the municipality would deem sufficient to avoid the enforcement order's promise of future municipal sanctions for continuing non-compliance. With no prior zoning decisions delineating community standards for car storage as an accessory use in R–3 districts, the board's failure to approve findings leaves Dykstra with inadequate notice to form a

**20.** *Presnell v. Leslie,* 3 N.Y.2d 384, 387, 165 N.Y.S.2d 488, 144 N.E.2d 381 (1957).

**21.** *Id.* at 388, 392, 165 N.Y.S.2d 488, 144 N.E.2d 381.

**22.** *Grandview Baptist Church v. City of Davenport,* 301 N.W.2d 704, 709 (Iowa 1981) (citing *Kowalski v. Lamar,* 25 Md.App. 493, 334 A.2d

536 (1975) for the proposition that an accessory structure must be "subordinate in area, extent, or purpose to the principal use or structure").

**23.** AMC 21.30.160(B).

**24.** *Id.*

"clear and precise understanding" of the action the municipality expects him to take to avoid sanctions for non-compliance with the enforcement order.

## IV. CONCLUSION

We therefore REMAND to the zoning board of examiners and appeals for entry of specific findings conforming with this opinion.